NOBLE A. HULL, PLAINTIFF IN ERROR, VS. J. C. GREELEY, DEFENDANT IN ERROR.

The authority of tax collectors to sell lands for unpaid taxes was ab- rogated by the general revenue law of 1891, Chapter 4010, and the act providing for certifying to the Comptroller lands upon which taxes have not been paid, Chapter 4011; and conse- quently a sale of land for unpaid taxes of 1890 by a tax collec-

tor in the year 1891, after such statutes took effect, is illegal. They took effect August 4, 1891, the Legislature having adjourned finally on the fifth day of the preceeding June.

The facts in the case are stated in the opinion of the court.

*Cooper & Cooper* for Plaintiff in Error.

*W. B. Owen* for Defendant in Error.

· RANEY, C. J. :

On the seventh day of September, 1891, R. H. Ramsey bought lot 4, of block 83, in the city of Jacksonville, which was sold that day at public outcry by the tax collector of Duval county, for unpaid State and county taxes of the year 1890. Ramsey paid the sum which he had bid, and on the 15th day of the same month the collector issued to him a certificate stating the fact of such sale, and that Ramsey or his assigns would be entitled to a deed of conveyance of such land in accordance with law, unless the same should be redeemed within one year by the payment of the amount with interest at the rate of twenty-five per cent. per annum. Ramsey transferred the certificate to one Hinchman, and the latter assigned to Greeley, and in October last Greeley brought mandamus against the plaintiff in error, the clerk of the Circuit Court of Duval county, to compel him to execute a deed for the land. A peremptory writ was awarded.

The controlling question, in view of our conclusions, is whether or not the law, as it was on the day of the sale, authorized the sale of land for taxes of

1890. This question involves that of the effect of the legislation of 1891, upon the prior statutes authorizing and regulating the sale of land for non-payment of State and county taxes. The sale of this land for its taxes of 1890, had there been no legislation in 1891, or if that legislation does not apply to such sale, would have been governed entirely by the general revenue act of 1887, Chapter 3681, approved June 13th, 1887, as amended by the acts of June 3d, 1889, Chapter 3847, and May 28th, 1889, Chapter 3848. The last of these chapters, 3848, took the place of the 47th section of the act of 1887, and provided that if the taxes upon any real estate should not be paid before the fourth day of February of any year, the tax collector should advertise and sell in the manner therein directed; and sections 39 to 42 of the act of 1887 regulated the sale of personal property for all taxes. The collector's warrant provided for by Section 32 of this act of 1887 required the collector to make all collections by levy and sale of goods and chattels, lands and tenements, on or before the first Monday in March, and make a full report to, and settlement with, the County Commissioners before the third Monday in that month. The same section enacted also that if the collector should fail or omit to obey the command of the warrant as therein required, it should be the duty of the County Commissioners to issue another warrant in the same form, naming and appointing therein such day as in their judgment should be proper, not exceeding sixty days from the first Monday in March, by which the taxes should be

collected and paid over and final settlement made
with the Comptroller and Commissioners. The 57th
section allowed one year next succeeding the sale of
any land by collectors for the redemption thereof, on
the terms and in the manner therein stated.

If the act of 1887 as thus amended, controls of it-
self the question before us, the redemption period of
one year prescribed by it had passed before the day,
September 21st, 1892, on which application was made
to the clerk for a deed, or that, October 31st, on
which resort was made to the courts for relief, and it
not being pretended that a redemption of the land
had been made, the relator was entitled to a deed.
We, however, must ascertain the effect of the legisla-
tion of 1891 on the law as it stood at the time of the
enactment of that legislation. The legislation of that
year to be considered consists of two statutes: One,
Chapter 4010, entitled: "An act for the assessment
and collection of revenue," (the same title as that
of the general revenue law of 1887, *supra*,) and the
other, Chapter 4011, entitled: "An act to provide for
certifying lands to the Comptroller upon which
taxes have not been paid, for the redemption thereof,
and for the forfeiture and sale of lands not redeemed."
Each of these statutes was approved June 10th, 1891,
and, under the operation of Section 18 of Article III
of the Constitution, went into effect August 4th, 1891,
or sixty days from the final adjournment of the Legis-
lature, which adjourned *sine die* on the 5th day of
June.

The former of these acts (Chapter 4010) which as such acts are usually described, is the general revenue law of 1891, has no section like Chapter 3848, *supra*, the amended forty-seventh section of the act of 1887, providing for the sale of land for taxes, but Sections 44 to 47 inclusive, provide for and regulate the sale of personal property; and while the thirty-seventh section of the statute (Chapter 4010) occupies in it a similar place to that held in the act of 1887 by the thirty-second section thereof, *supra*, and prescribes the form of warrant to be issued to the collector, that warrant's command or direction is that the taxes on personal property shall, in case they are not paid by the first day of March of any year, be collected by the sale of goods and chattels of the person so assessed, and that "the tax on personal property must be collected without resort to real property," and it expressly requires that on the first day of April the collector shall "certify to the Comptroller the amount of taxes due and unpaid on real property, in such manner and form as the Comptroller may direct;" and requires a final settlement with the Comptroller and County Commissioners on or before the tenth day of April. The next or thirty-eighth section, after providing like the thirty-second section of the act of 1887, for the issue of the second warrant in the same form as the first, but returnable not later than the first Monday in March, enacts, in the form of a proviso, that "all warrants now outstanding shall be in full force and effect

until all taxes remaining unpaid, other than those upon lands and tenements, shall have been collected and final report and settlement made by the tax collectors with the State and county authorities; and all warrants heretofore issued or to be issued shall be of full force and effect as to goods and chattels in the hands of any successor, immediate or remote, of the collector to whom it may have been or may be issued."

Pausing to consider the effect of this act of 1891, Chapter 4010, in so far as we have stated its provisions, and not failing to remember that it is a statute of fifty-eight sections covering every subject covered by the general revenue law of 1887, and operating as a revision of it, and entirely repealing it (State ex rel. vs. Palmes, 23 Fla., 620, 624, 3 South. Rep., 171), except in so far as any of its provisions as to assessment and sale may be kept alive by the fifty-seventh section, hereinafter noticed, for the special purposes therein mentioned, and excepting also the retention by the seventh and eighth sections of Chapter 4011, mentioned below, of its provisions as to redemption and deeds, it seems clear not only that its purpose was that there should not be any public sale of lands by tax collectors for the collection of unpaid taxes to be assessed under its provisions, but also that the warrants which were outstanding on the day it became of force, August 4th, 1891, should no longer authorize compulsory collection of the taxes assessed on land

and unpaid, or the sale of land.   No other conclusion.
as to the outstanding warrants and unpaid taxes is.
consistent with the proviso to the thirty-eighth section
given above, and we do not find anything in the act.
that is inconsistent with this view.   The provisions of
the fifty-seventh section referred to above, that noth-
ing in the statute shall be construed so as to impair
the validity of any proceeding had or done, or that
may hereafter be had or done by any collector for the
collection of any taxes assessed before January 1st,
1892, were, in so far as they relate to assessments,
enacted in view of the advanced condition or status.
of the assessments of 1891, at the time of this legisla-
tion.   Those as to proceedings by collectors were in-
tended, in so far as they are prospective, to preserve
the old law as applicable, alike with the new, to any-
thing the collector might lawfully do in collecting
taxes, but they can not be construed to neutralize the
provisions noticed above which take from the collec-
tor the power to sell land for taxes.   They relate only
to his performance of those powers and duties as to
taxes assessed prior to 1892, which were not taken
away from him by the act.   If the provision can be
construed as continuing the power to sell land for
taxes assessed in 1890, then it must be held to have
the same effect as to taxes assessed in 1891, as it does.
not make any distinction between taxes assessed in.
1890, and those of 1891.   That collectors can not sell
land for taxes assessed in 1891, will be made altogether

unquestionable by the mere reading of Chapter 4011, soon to he presented. There are other sections of this act, Chapter 4010, which recognize the substitution for sales of land by collectors of a general system of sales by another officer, the Commissioner of Agriculture, of the lands certified to the Comptroller, which will be noticed in connection with the other act of 1891, Chapter 4011, which chapter we will now consider.

The first section of this act, Chapter 4011, is, that from and after the first day of January, 1892, there shall be no more lands sold for taxes in the State of Florida, either State or county. The second is, that it shall be the duty of tax collectors to open their books for the payment of taxes on the first Monday in November, 1891, and keep them open till the first Monday in April, 1892, and to do likewise in each succeeding year. The third section provides that when the collectors shall have closed their books as "now or herein provided," it shall not be lawful for them to receive further moneys that remain due for taxes on land, and that within thirty days after the date of closing of said books it shall be the duty of the collectors to make out prescribed triplicate lists of all lands upon which taxes have not been paid, one of which shall be forwarded to the Comptroller, another to the clerk of the Circuit Court, and the third to be kept by the collector. This section also provides for certain certificates which are to be sent to the Comptroller. The fourth section directs the Comptroller to publish in each county the lists from that county, within one year from their receipt; and the fifth sec-

tion regulates the redemption of such lands. The sixth section enacts that the State's title to all land which shall have been certified to it, and which shall not have been redeemed, shall mature and become absolute at the expiration of two years from its certification; and that all such land shall be placed by the Comptroller upon the State's list of public lands, and, when sold by the State, all proceeds arisirg therefrom, over and above the amount of taxes, shall be placed to the credit of the general revenue funds of the State. This section also extends the time of redemption up to any time prior to a sale by the State. The seventh section is: That no deeds, as now provided by law shall issue upon any tax certificate now outstanding for two years from the passage of this act, and any person whose land may have heretofore been sold for taxes, and to which tax deeds shall not have been issued at the time of the passage of this act, shall at any time within two years from the passage of this act have the right to redeem said lands by taking the steps now required by law for the redemption of lands from tax sales. The eighth section enacts that all deeds upon which tax certificates may now be outstanding, and which shall not be redeemed as provided by Section 7, shall at the expiration of two years from the passage of this act issue as provided by law at the time of the passage of this act. The ninth section provides for grading and fixing the price of the lands acquired by the State thereunder; and the tenth section, for the sale of the lands by the Commissioner of Agriculture and for deeds of convey-

ance. The eleventh section repeals all conflicting laws; and the twelfth is that "this act shall be construed in connection with the general revenue law," *i. e.* Chapter 4010.

This statute (as shown by its last section), and the other act of the same year are to be construed *in pari materia*, or as one law. Its first section, standing alone, is not inconsistent with the idea that sales of lands for taxes might be made at any time in the year 1891 ; yet in can not be denied that the section does not of itself give power to sell lands ; and, as it does not do so, it can not be said that it qualifies or neutralizes the provisions of Chapter 4010, which took away that power upon the fourth day of August, 1891, the day it became operative. The expression "now or herein provided," as used in the third section, means, not only that lands under the assessments of 1891 and future years should be certified to the Comptroller within thirty days after the first Monday in April, but, as shown by the word "now," that whenever collectors closed any outstanding book, to the extent that such books were kept alive for the collection of taxes, they should within thirty days thereafter certify all lands to the Comptroller in the manner prescribed by such third section. When Chapter 4010, the general revenue law of 1891, became operative, the power of collectors to sell lands for all past or future assessments of taxes ceased. This is shown not only by the provisions of that act as explained above, but by the absence from it and from Chapter 4011, of

any provisions for redemption against any such sales, or of any tax certificate that would have been issued thereafter in 1891, had the old system of sales con-tinued.   The seventh section of the latter act made ex-press and unmistakable provision for all certificates that might be outstanding upon its taking effect (al-though that provision has been held invalid as to pri-vate purchasers buying prior to the statute:   Hull vs. State *ex rel.* Rollins, 29 Fla., 79, 11 South. Rep., 97) ; and the eighth section provides for deeds when there has been no redemption of such certificates. Though the conclusions announced above have been formed without reference to the mere absence of pro-vision for redemption against any sales in 1891 after the statutes took effect, still it is not to be thought that such sales would have been authorized without the providing for redemption against the same.   The absence of provision for such redemption is, in view of the other features of the act relied on in reaching our conclusion, substantial evidence that no such sales were intended by the law makers.

The sections of Chapter 4010 alluded to above as recognizing the system of sales by the Commissioner of Agriculture, are the 53d and 54th, which prescribe the limitation of suits for setting aside deeds of land sold by such Commissioner, and the conditions to re-covery in such suits, and provide for refunding and

31

·other proceedings where land has been certified to the Comptroller and sold, and it is afterwards discovered that the taxes were duly paid.

The judgment awarding the peremptory writ will be reversed, and the cause remanded for judgment in accordance with this opinion. State *ex rel.* vs. County ·Commissioners of Sumter county, 22 Fla., 364, 370. It will be ordered accordingly.