DR. P. PHILLIPS, *Plaintiff in Error*, v. TOWN OF ALTAMONTE SPRINGS, A MUNICIPAL CORPORATION, *Defendant in Error.*

### En Banc.

### Opinion Filed November 9, 1926.

1. Section 1916, Revised General Statutes of Florida, 1920, providing for the exclusion of lands from territorial limits of cities or towns of less than one hundred and fifty qualified electors, applies to those cities or towns incorporated by special act of the legislature in the same manner as those incorporated under the provisions of the general laws relating to incorporation of municipalities, unless there is some special provision in the special act which either expressly repeals the general law, or by positive repugnancy repeals the general law by implication.

2. Such petition may be presented by a single individual owner who is within the class permitted to petition for exclusion when such petition relates alone to his individual lands.

A Writ of Error to the Circuit Court for Seminole County; J. J. Dickenson, Judge.

Judgment reversed.

*Allison E. Palmer,* for Plaintiff in Error;

*George A. DeCottes* and *Samuel R. Dighton,* for Defendant in Error.

KOONCE, Circuit Judge.—Plaintiff in error filed his amended petition in the court below under the provisions of Section 1916, Revised General Statutes of Florida (1920), alleging that the Town of Altamonte Springs was incorporated by special act of the Legislature of 1921, and that it is a town of less than one hundred and fifty qualified electors, that owing to the extent of the territory of said town certain land belonging to plaintiffs was embraced within the limits of the town which from distance and other causes were virtually or commensurately excluded from the benefits of such municipal organization.

Defendant filed answer and also demurrer to the amended petition, which demurrer was sustained and the plaintiff declining to further amend judgment was given for the defendant, and the cause dismissed.

There are two assignments of error, *viz*:

"1.   The court erred in sustaining the demurrer to the amended petition of petitioner.

"2.   The court erred in entering final judgment in favor of the defendant."

It is agreed that the sole question presented by the demurrer and the writ of error is, "Whether or not any incorporated town or city from whose limits lands may be excluded or detached under the provisions of Section 1916, Revised General Statutes of Florida, includes and embraces those towns and cities incorporated by special or local act of the Legislature."

Cities and towns are incorporated under the Constitution of Florida either by compliance with the provisions of the general statutes authorizing such corporation, or by

special act of the Legislature. Of course one of the essential requirements of any charter or incorporation of any city or town, is fixed boundaries. This is determined by the act of incorporation whether by concurrence of the inhabitants of the territory, under the general provisions of law, in which at least a majority of the inhabitants included in the territory agree, or by the act of the Legislature in a special charter which arbitrarily fixes such boundaries without (generally) even submitting the question to the inhabitants to be accepted or rejected.

It may often happen that a number of ''optimists,'' over-zealous. ''progressives,'' residing within certain territorial limits may be of sufficient majority to comply with the statutory requirements and organize a municipal corporation embracing such territory, over the objections of some who may thereby feel aggrieved or materially injured. While the tendency of a democratic form of government is to yield to the majority rule, it does not therefore follow that the majority is always right. Most any defeated candidate can offer many convincing arguments (at least in his opinion) to show that the minority is often absolutely correct.

It is also within the bounds of possibility that a State Legislature may, through the very efficacious rule of ''courtesy to a fellow member'' sometimes enact local laws which are harmful to individuals who did not know of the proposed legislation and did not object, or objecting, lacked the persuasive powers to overcome the influence of the member invoking the ''courtesy rule.''

It may also be further noted that most all legislation is the direct result of some experience on the part of the introducer of the bill, or his observation of some other particular incident or circumstance which suggested the necessity for certain rights or remedies.

At the time of the enactment of Chapter 5197, Acts of

1903, which is brought forward in the Revised General Statutes of 1920 as Section 1916, and which will hereinafter be referred to as Section 1916, the great State of Florida had already progressed to the extent of inspiring the desire on the part of many communities to establish political subdivisions of the State to be called cities or towns. Numerous municipalities had already been established under the general laws relating to incorporations, and under the provisions of such general laws (Sec. 1826, Rev. Gen. Stats.), all such municipalities having more than three hundred registered voters were designated as "Cities" with all the rights and privileges of cities. Those having less than three hundred registered voters were to be known as "Towns," with the privileges incident thereto. Yet all the communities desiring the distinction had not incorporated under the general laws, but many of them had invoked the aid of the Legislature and obtained special charters of incorporation. Some of the more ambitious, with full faith in the "wonderful resources and matchless climate," etc., aided by the alert and artful realtor, visioned at any early date such an influx of population, with public improvements and the consequent expenditures of large sums of money which must be derived by taxation, and in order to meet such expectations embraced large territory. Not only that, but they did not deem the name "Town" of sufficient dignity to designate the municipality of their dreams, and so they took care in the special act of incorporation to be designated as a "City," though often having less than the three hundred registered voters required by the general laws.

Now these remarks are not personal to the defendant in error, nor are they in any sense indicative of the views of this court upon any inequities or inequalities alleged in the petition filed in this case. Under the present status of the case it is not necessary for this court to form or express

any opinion in regard to the claims of the plaintiff in error. The application of these general statements goes to the "intent" of the Legislature in enacting Section 1916, Revised General Statutes.

It seems more than possible, indeed it is highly probable, that the particular law was enacted to meet just such emergencies as alleged in the plaintiff's petition. Some Cincinnatus (or maybe some pessimist) observed the encroachment of "progress" upon the ancestral estate, or property acquired perhaps by the sweat of the brow (or otherwise), and felt that there should be some restrictions or remedy against such invasions, and so this act (Sec. 1916) was proposed. It is hardly to be conceived that such public benefactor intended to confine his remedial legislation to only those municipalities incorporated under the general laws; surely he was willing that his largess be bestowed upon all "unfortunates" suffering from like oppression. Indeed, it is much more likely that he aimed particularly at those corporations established by special acts of the Legislature, since by the very nature of things these were more likely to possess the objectional feature, because as already pointed out, by incorporating under the general laws at least a majority of the inhabitants would be in favor of such corporation, while under the special acts they, generally, had no voice in the matter. As further evidence of the intention of the Legislature it may be remarked that the act (Section 1916) applied only to those corporations having less than one hundred and fifty qualified electors, and yet the act says that "Any town (or City) having less than that number of qualified electors, would be subject to the procedure therein provided." In view of the fact already mentioned that only those corporations organized by special legislation could be "Cities" when there were less than three hundred registered voters, the use of the word "City" in the act would be meaningless unless it was intended to

apply to both those towns and cities incorporated by general law and by special act. The defining words which determine what corporations are subject to the act are these: "Any town (or city) having less than one hundred and fifty qualified electors." The number of inhabitants and not the manner of incorporation determined the application of the law.

As above pointed out, both special charter cities and towns and those created under general laws, were, at the time Section 1916 was enacted, then in existence, and if the Legislature had intended to except from its provisions the special chartered cities and towns such exception would have been written in the law. It not appearing therein this court is not authorized to interpolate such exception..

What does it matter whether the necessary incident of boundaries was fixed by special act or general law? Neither would be irrevocable against future legislation or proceedings under general laws applicable thereto.

The sixth ground of defendant's demurrer brings to the attention of the court Article III, Section 24, of the Florida Constitution, which provides that "the Legislature shall establish a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws are provided by Legislature that may be inconsistent therewith." It is insisted that solely because the defendant corporation was the creature of special legislation such special act is inconsistent with the general laws relating to municipalities. There is no question that when a special act is in direct conflict, or is repugnant to the general laws that the special act will prevail. So if the act incorporating the defendant had provided some different means or method for the exclusion or detachment of lands from the territory, or had expressly repealed the general act so far as it might apply to such corporation or excepted it from the operation of such general act, then

such fact would be conclusive against the petition. But so far as the pleadings now before the court appear there was no such repealing or exceptions clause. If there is in fact such clause in the special act incorporating the defendant, it may be successfully pleaded to the petition. The mere fixing of boundaries of a town or city by special or local law cannot be said to be so repugnant to the general law (Section 1916) as to amount to repeal of the general law, by implication. This court has repeatedly held that "repeals by implication are not favored, and in order that a court may declare that one statute repeals another by implication, it must appear that there is a positive repugnancy between the two, or that the last was clearly intended to prescribe the only rule which should govern the case provided for, or that it revises the subject matter of the former." Dade County v. City of Miami, 77 Fla. 786, 82 South. Rep. 354; Middleton v. State, 74 Fla. 234, 76 South. Rep. 785; State v. Gadsden County, 63 Fla. 620, 58 South. Rep. 232; Hull v. Greeley, 31 Fa. 471, 12 South. Rep. 469; State ex rel. Gonzalez v. Palmes, 23 Fla. 620, 3 South. Rep. 171.

There is a usual provision in special charters that the general laws shall apply where applicable and when not in conflict with some expressed provision of the special act. It does not appear by the pleadings whether this is true in the instant case or not. This Court has recognized the right of cities and towns incorporated under special acts to invoke the general laws relating to its government. See State ex rel. Ellis v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358, 19 L. R. A. (N. S.) 183; Liberis v. Harper, 89 Fla. 477, 104 South. Rep. 853. If a city or town though incorporated by special act may enjoy the privileges and benefits of the general laws relating to municipal governments, why should the mere fact of special act of incorporation give immunity from remedies against the city or

town, not specially provided against in the incorporation act of the Legislature?

In the case of Hoyler v. Watertown, 16 S. D. 25, 91 N. W. Rep. 334, the court said: "Laws of 1893, C. 150, provides that 'any city shall have full power to construct a system of sewerage' and that the expenses of sewers constructed under the provisions of the act shall be paid by special assessments, the word 'any' is used in the sense of 'every,' and the act applies to cities organized under special charters as well as those organized under the general laws."

Another South Dakota case which particularly applies to the case under consideration, is that of Coughran v. Huron, 17 S. D. 271, 96 N. W. Rep. 92. This was an action to exclude or detach property from the territorial limits of a town or city. A demurrer was interposed raising the identical question presented by demurrer in the instant case,—that the city was incorporated under special act of the legislature and that therefore the general laws relating to exclusion of territory did not apply. The court said: "As a city operating under a special charter act is not excepted in the law it is not competent for this court to interpolate such exception therein."

It may be said therefore that Section 1916 of the Revised General Statutes of Florida (1920), providing for the exclusion of lands from the territorial limits of cities or towns of less than one hundred and fifty qualified electors, applies to those cities or towns incorporated by special act of the legislature in the same manner as those incorporated under the provisions of the general laws relating to incorporation of municipalities, unless there is some special provision in the special act which either expressly repeals the general law, or by positive repugnancy repeals the general law by implication.

While it has been agreed that the question to be considered upon this writ of error was the one above discussed, it may be pertinent to the cause to also point out that the 12th ground of defendant's demurrer to the petition, namely, that such petition can only be filed by three-fourths of the owners of lands within the territorial limits of the town or city, is without merit. Such petition may be presented by a single individual owner who is within the class permitted to petition for exclusion, when such petition relates alone to his individual lands.

The judgment of the Circuit Court is reversed and the case remanded with direction to overrule the demurrer and for such further proceedings in the case as may be proper.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment of the court below should be, and the same is hereby reversed and the case remanded with direction to overrule the demurrer and for such further proceedings in the case as may be proper.

WHITFIELD AND TERRELL, J. J., concur.

BROWN, C. J., AND ELLIS, STRUM AND BUFORD, J. J., concur in the conclusion.

## PHILLIPS v. TOWN OF ALTAMONTE.

WHITFIELD, J., concurring.—The Constitution provides that: "The legislature shall establish a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws are

provided by the legislature that may be inconsistent there-
with.''

Section 1916, Revised General Statutes, 1920, is as fol-
lows: ''When any incorporated town (or city) contain-
ing less than one hundred and fifty qualified electors
shall, owing to extent of territory, have embraced within
the limits any lands which may from distance or other
cause be virtually or commensurately excluded from the
benefits of such municipal organization, it shall be unlawful
for any owners of such lands or three-fourths of them de-
siring to have the same excluded from such corporation
limits and jurisdiction, to apply by petition to the circuit
court in and for the county in which said incorporated
town is situated, setting forth in said petition the limits
of such incorporated town as then existing and the ground
of his or their objection to be included within the limits
of such corporation; whereupon the circuit court shall
order notice of said application to be served upon the
mayor of said town or city and appoint a day for the hear-
ing of such application.

''If upon the hearing of said application the said court
shall sustain the said objection, the said tract or tracts of
land shall be excluded. Such petition may be heard and
determined by said court in term time or vacation, and
any question of fact may be determined by said court
without a jury.''

The special law incorporating the Town of Altemonte
Springs provides that ''the territorial boundaries of which
shall be as follows, to-wit:'' (giving particular descrip-
tions by government subdivisions of sections, township and
range).

This designation of the ''boundaries'' of the town by
the special law is not inconsistent with the provisions of
the general law, Section 1916, Revised General Statutes,

above quoted, therefore under the Constitution the general law is applicable. See City of St. Petersburg v. Pinellas County Power Co., 87 Fla. 315, 100 South. Rep. 509.

BROWN, C. J., AND ELLIS, TERRELL AND STRUM, J. J., concur.

BROWN, C. J., concurring.—The establishment of municipal boundaries is primarily, and perhaps exclusively, a legislative function. The legislature may do this directly, by special act describing the boundaries, or it may enact general laws by which this power is delegated to appropriate local bodies or boards. But it has in some cases been made a question how far this power, which is essentially political or administrative, may be conferred upon the judicial courts. 1 Dillon Munic. Corp., 615-6. Strictly speaking, Section 1916, Rev. Gen. States., does not amount to conferring the power of establishing municipal boundaries upon the judicial branch. Rather, by it the legislature is itself providing a method for rectifying its own work—whether done directly or through delegated powers, so that where injustice has been done by the inclusion of any lands which should not reasonably and justly have been included, the same may, after due hearing, be excluded by the courts in the manner and for the reasons provided by the Act. The court acts by authority of the statute—by virtue of the same authority which directly or indirectly fixed the boundaries in the first instance. That such powers may under our Constitution be conferred upon the Circuit Court, can hardly be doubted. State v. Duval County, 76 Fla. 180, 79 So. 692. The power of establishment of such boundaries being legislative and administrative in its nature, land which has once become a part of an incorporated city by virtue of a valid and con-

stitutional statute, can only be detached or excluded there-from by the authority of a statute. 1 Dillon Munic. Corp., 622-3, Sec. 356. This of course does not raise the question of the power or duty of the courts to inquire into the constitutionality of any legislative act fixing municipal boundaries. Vast as is the legislative power in this regard, it must of course be exercised in harmony with the higher law of the Constitution. I am inclined to the opinion that Section 1916 of Rev. Gen. Stats. is a valid delegation of power, not contrary to the Constitution, and that the conclusion arrived at in the opinion of Judge Koonce, that it may apply to municipalities and their boundaries as fixed by special act, where the municipality contains less than 150 qualified electors, is correct.