THE STATE OF FLORIDA, ex rel. THE ATTORNEY GENERAL, et al., *Relators,* v. THE CITY OF AVON PARK, *Respondent.*

149 So. 409.

Opinion filed March 10, 1933.

Opinion on re-argument filed June 2, 1933.

Re-hearing denied July 12, 1933.

*Walker & Willson* and *Mabry, Reaves & White,* for Relators;

*S. Colquitt Pardee,* for Respondent;

*Giles & Gurney,* as *amici curiae.*

WHITFIELD, J.—In *quo warranto* proceedings instituted in this Court against the City of Avon Park by the Attorney General, joined by numerous co-relators, who are owners of unoccupied or unimproved lands in the municipality, it is sought to have an adjudication that the City of Avon Park is unlawfully usurping, exercising and enjoying the functions, privileges, powers and franchises of a municipality over described rural lands of the co-relators included within the boundaries of the municipality, the contention in effect being that the charter acts of the municipality, Chapter 10320, Acts of 1925, and Chapter 12514, Acts of 1927, violate designated provisions of the Constitution by including in the municipality large areas of unoccupied and unimproved lands, including described lands of the co-relators, that are not actually or potentially needed or useful for municipal purposes, which lands can receive no benefit from the municipality in return for the municipal taxes imposed on them. The respondent's demurrer to the information was overruled. Demurrers to the answer of the respondent city were sustained. See foregoing case of State ex rel. v. City of Avon Park, 144 So. 306. An amended answer has been demurred to.

It appears that the Town of Avon Park was incorporated by Chapter 6662, Acts of 1913, covering "approximately 1,440 acres, less water;" that the State census of 1925 shows a population of 1,534 in Avon Park; that by Chapter 10320, Acts of 1925, enacted after the State census was taken, the corporate limits of Avon Park, then designated as a city, were extended to include a total of 36 sections of 640 acres each or a total of 23,040 acres, a large portion of which including those of the co-relators described in the information, are rural lands; and the newly added territory was made liable for the debts and liabilities of the city. The Federal census of 1930 shows 3,355 inhabitants in the City

of Avon Park, including the inhabitants of the added territory; the population in the original municipality being 890 in 1920 and 1,534 in 1925.

By Chapter 12514, Acts of 1927, the added territory was declared to be not liable for bonds issued by the municipality prior to January 1, 1926. See also State v. City of Avon Park, 96 Fla. 494, 118 So. 223. The added territory is made liable for taxation for municipal expenses and for the municipal debts since January, 1926. It appears that some of the inhabitants of the added territory have participated in the municipal elections of the city; that some improvements have been made by the municipality in some portions of the added territory and that some police and fire protection has been afforded by the municipality in some portions of the added territory; but it does not appear that the co-relators are estopped by acquiescence or otherwise to join in maintaining this action to test the legality of the incorporation of their described rural lands in the municipality by the corporate charters of 1925 and 1927, which charters it is alleged violate the organic property rights of the co-relators. Whether a charter Act or other statute is unconstitutional in whole or in part on the grounds asserted in this proceeding, should be determined by a careful consideration of the facts of each case and the controlling provisions and principles of law applicable thereto. All reasonable doubts as to the validity of a statute or a portion thereof shall be resolved in favor of the legislative enactment.

The information contains exhaustive allegations relative to the asserted authority of the municipality and its operations thereunder with reference to the alleged violation of property rights of the co-relators, and it is prayed that the respondent municipality "answer to the said State, and to the co-relators herein by what warrant or authority of law

it claims to exercise, employ, and perform the functions, powers, privileges and franchises of a municipality in, upon and over the lands of the co-relators hereinbefore set forth and described, and that the Court will declare that the said City of Avon Park is unlawfully usurping, exercising and enjoying the functions, privileges, powers, and franchises of a municipality over said lands, contrary to the ·Constitution and Laws of Florida, and that it be ousted therefrom."

A voluminous amended answer contains detailed averments designed to show that co-relators' lands that are included in the municipality are actually or potentially benefited by the municipal government and its operations and that property rights of the co-relators are not being violated by the levy of municipal taxes upon co-relators' lands within the municipality.

It appears that municipal bonds have been issued under the charter of the municipality which embraces the lands of the co-relators. The bondholders are not parties to this action, and their rights, if any, with reference to lands included in the municipality when the bonds were issued, are not affected by the adjudication of this cause.

The courts have no substantive power to invalidate a legislative enactment upon allegations of its illegality, when the enactment, even if invalid, is not shown to violate organic rights that are duly asserted in appropriate procedure.

But when in authorized proceedings in a court of competent jurisdiction, it is duly and clearly shown, that, in whole or in part, a legislative enactment by its terms or intendments or in its application, violates organic rights to the substantial injury of a party to the cause, it is within the province of the court, in adjudicating the litigated rights of the parties, to make effective the guarantees of the Con-

stitution even if in doing so the court adjudges that the legislative enactment as applied to the rights asserted, conflicts with the requirements of organic law and that as a consequence, the Constitution, being the paramount law, renders the statutory enactment inoperative in the premises.

Whether a charter Act or other statute is unconstitutional in its entirety or in part, on the grounds asserted in this proceeding, should be determined by a careful consideration of the enactment and of the facts in each case and of the provisions and principles of the paramount organic law applicable thereto. All reasonable doubts as to its validity should be resolved in favor of the legislative enactment.

The principal question for determination is whether the intent of Section 8 of Article VIII of the present State Constitution is to give to the Legislature unlimited power to establish municipalities *and to define or extend their boundaries,* without reference to the provisions and principles of organic law that are designed to secure property rights by due process and equal protection of the laws and just compensation for property taken for public use; or whether the purpose of such organic section was to remove the limitations contained in the Constitutions of 1861, 1865 and 1868, requiring municipalities to be established pursuant to general laws and forbidding special or local laws incorporating municipalities. The power to incorporate municipalities and to define their jurisdiction and authority, is legislative in its nature; and such power is exercised by the Legislature subject to applicable organic limitations if any. Any and all legislative action is subject to constitutional limitations; otherwise the Constitution would not be the supreme and controlling law.

Section 8, Article VIII, does not specifically define or regulate the power of the Legislature to designate the ter-

ritorial boundaries of municipalities, though the organic section does state that "the Legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers and to alter or amend the same at any time," which quoted powers were exercised, originally by the enactment of special laws incorporating municipalities separately and defining their boundaries, as an inherent legislative power, by territorial legislative council enactments, as authorized under Acts of Congress, and later by the Legislature of the State of Florida under the Constitution of 1838, from 1822 until the Constitution of 1861 required the legislative power to incorporate towns to be exercised only by general laws, as will be stated herein.

The Constitution requires all the area of the State to be divided into counties; but the Constitution does not contemplate that all the lands in the State shall be embraced in municipal corporations. The present organic provisions relating to establishing municipalities, by necessary implication, contemplate the creation of municipalities embracing severally a community of people within a limited area that would be appropriate to the actual and potential needs and uses of a municipality, as had, throughout the history of the Territory and the State, been done by special legislative Acts or by voluntary incorporations under general laws on that subject.

As a general concept a municipality commonly called a city or a town, may be regarded as a legally incorporated or duly authorized association of the inhabitants of a particularly designated place or limited territorial area, established for prescribed local governmental and public utility or other public purposes.

In remote antiquity cities were established in the gradual development of human civilization; and each city was main-

tained by virtue of the organized and disciplined collective power of the inhabitants under varying forms of government, designed to secure the safety and welfare of the people.   See 43 C. J. 67; 19 R. C. L. 696.

Prior to the Revolution and the resulting independence of the American States, local government in the nature of municipalities existed in England and in the American Colonies, by prescription or otherwise under sovereign recognition or under special charters from the sovereign.   I Dillon Municipal Corporations (5th Ed.), Sections 50 *et seq.*

In the States of the American Union the Legislature is representative of the sovereignty of the respective States; and ordinarily municipalities may be established only by legislative authority.   They are usually organized by special legislative Acts or pursuant to general laws for incorporating municipalities.   43 C. J. 68; 1 Dillon, Mun. Corp. (5th Ed.) 55 *et seq.*   See also general and special statutes of Florida relating to the establishment and the jurisdiction and powers of municipalities—cities and towns.

Prior to the cession of the Floridas to the United States, by a treaty dated February 2 , 1819, the municipalities of Pensacola in West Florida, and of St. Augustine in East Florida, each with local governmental authority, existed under the civil law of Spain.   Under the treaty, the "property and sovereignty" of Spain in East Florida was transferred to the United States at St. Augustine, July 10, 1821, and the transfer of the "property and sovereignty" in West Florida was effected at Pensacola July 17, 1821.   Vol. 5, pp. 4838 *et seq.,* Compiled General Laws.

By virtue of an Act of Congress approved March 3, 1821, and by special authority conferred under that Act by the President of the United States, Major General Andrew Jackson as Governor of the Floridas, by an ordinance dated

July 18, 1821, established a municipal government in the "town of Pensacola," consisting of a Mayor and Council, with designated municipal authority within a specifically defined and limited area. See Territorial Acts of 1822-5, p. XVII. Perhaps similar action was taken with reference to St. Augustine in East Florida.

An Act of Congress approved March 31, 1822, provided for organizing the ceded Spanish provinces of East and West Florida into the Territory of Florida; and gave the Legislative Council of such Territory "legislative powers over all rightful subjects of legislation," consistent with the Constitution and Laws of the United States. Under this authority such legislative council by separate Acts incorporated the City of Pensacola, August 23, 1822, with limited and defined boundaries and authority. The City of St. Augustine was likewise incorporated September 13, 1822. Other municipalities were severally established in described and very limited areas in the Territory of Florida by its Legislative Council, the incorporated area of Tallahassee, the capital of the Territory, and of the Town of Quincy and perhaps other towns, as seats of the county government, each embracing one quarter section or 160 acres. They incorporated area or subsequently incorporated municipalities being quite generally somewhat more or less than 640 acres or one section of land, and not in excess of one mile each way from the county court house. See Chapter 949, Acts 1858, incorporating the City of Lake City, and Chapters 492 and 493, Acts of 1853, incorporating the towns of Palatka and Marianna. See also Chaps. 6332, 6343, 6344, 6346, 6363, 6365, 6400, Acts 1911; Chaps. 1128, 7139, 7147, 7218, 7345, Acts of 1915.

The Constitution of 1838, which became the organic law of the State of Florida upon its admission into the Union, March 3, 1845, continued in force all laws of the Legis-

lative Council of the Territory of Florida that were not repugnant to the Constitution. This continued the municipalities previously incorporated by the Territorial Legislative Council; and under the general "legislative power of the State vested in" the "General Assembly".by the Constitution of 1838, still other municipalities were by special or local legislative enactments severally incorporated in the State of Florida, each incorporation being confined to limited and specifically described land area. The City of Tampa was incorporated by a special or local Act approved December 15, 1855, with an area of the then usual size of Florida municipalities.

By Chapter 84, Acts of 1846, general provisions of law were enacted·for the voluntary incorporation "of any town in this' State having not less than one hundred inhabitants." See also general laws for incorporating and for extending the boundaries of cities and towns, Chapter 1479, Acts of 1866; Chapter 1638, Acts of 1868; Chapter 1688, Acts of 1869; Section 2935 (1825) C. G. L. As to extension of municipal boundaries under Section 3051 (1918) C. G. L., see State ex rel. v. City of Homestead, 100 Fla. 354, 130 So. 28; City of Orlando v. Orlando Water & Light Co., 50 Fla. 207, 39 So. 532.

Chapter 6163, Acts of 1879, as amended by Chapter 5197, Acts of 1903, Sections 3048 (1915), 3049 (1916) *et seq.* C. G. L., provides for corporate contraction of municipal boundaries' and also for a judicial exclusion from towns containing less than one hundred and fifty qualified electors "lands which may from distance or other cause be virtually conmmensurately excluded from the benefits of such municipal organization." See Welch v. Town of Cottondale, 61 Fla. 470, 54 So. 594; Town of Ormond v. Shaw, 50 Fla. 445, 39 So. 108; Phillips v. Altamonte Springs, 92 Fla. 863, 110 So. 460; Heebner v. Orange City, 44 Fla. 159, 32

So. 879; City of Ocoee v. West, 102 Fla. 277, 130 So. 9. See also City of Jacksonville v. L'Engle, 20 Fla. 344; Sections 3054 (1921) *et seq.,* C. G. L.

Section 24, Article IV, Constitution of 1861, and Section 20, Article IV, Constitution of 1865, required the enactment of general laws for the incorporation of towns, and forbade special laws on that subject.

The Constitution of 1868 contained the following:

"The Legislature shall establish a uniform system of county, township and municipal government." Section 21, Article IV.

"The Legislature shall provide by general law for incorporating such municipal, educational, agricultural, mechanical, mining, and other useful companies or associations as may be deemed necessary." Section 22, Article IV.

"The Legislature shall not pass special or local laws * * * regulating municipal business" or "the election of * * * municipal officers." Section 17, Article ID.

"Such 'laws shall be general and of uniform operation throughout the State.' Section 18, Article IV."

It has been held that the above provisions of Article IV of the Constitution of 1868 forbade local or special laws respecting municipalities, but did not forbid proper classifications of municipalities for general legislative regulation. See State ex rel. v. Stark, 18 Fla. 255; *Ex-Parte* George S. Wells, 21 Fla. 280; Town of Enterprise v. State, 29 Fla. 128, 10 So. 740.

The Constitution of 1885 contains the following:

"The Legislature shall establish a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws are provided by the Legislature that may be inconsistent therewith." Section 24, Article III.

"The Legislature shall have power to establish, and to abolish, municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. When any municipality shall be abolished, provision shall be made for the protection of its creditors." Section 8, Article VIII.

The above provisions of the Constitution of 1885 recognize the power of the Legislature to create and regulate municipalities as a law-making function theretofore exercised by the Legislature; and the organic provisions of Section 24, Article III, and Section 8, Article VIII, were intended to charge the quoted provisions of the Constitution of 1868 so as to permit special or local legislation respecting municipalities. The constitution of 1885 not only omitted the pre-existing organic provisions forbidding special or local laws for establishing municipalities, but Section 8, Article VIII, expressly authorized laws creating municipalities to be enacted "at any time." Section 24 of Article III refers to special or local laws to be enacted relating to municipal government, thus disclosing that the organic purpose was not to confer unlimited power upon the Legislature to establish municipalities without reference to the restraints upon all legislation contained in other sections of the Constitution, but the purpose being to authorize municipalities to be established by special or local laws which had been forbidden by the previous constitutions of the State. See State ex rel. v. Commissioners of Duval County, 23 Fla. 483, 3 So. 193. Section 8, Article VIII, expressly contemplates the enactment of special or local laws with respect to municipalities to meet conditions that existed under the Constitution of 1868 as disclosed to some extent by Chapters 3603, 3607, Acts of 1885, and in *Ex-Parte* Wells, 21 Fla. 280. See also McConihe v. McMurray, 17 Fla. 238; State ex rel. v. Starke, 18 Fla. 255; Lake v. Palmer, 18 Fla. 301;

Town of Enterprise v. State. 29 Fla. 128, 10 So. 740; Attorney General ex rel. Wilkins v. Connors, 27 Fla. 329, 9 So. 7. Such organic section and Section 24, Article III, states the powers of the Legislature, when duly exercised, with respect to the creation and the jurisdiction and powers, as well as the abolishment of municipalities.

To remedy the conditions that existed under the Constitution of 1868, and to meet the needs of the times and to conserve the public welfare, special charter laws pursuant to Section 8, Article VIII, were enacted at the first session of the Legislature under the Constitution of 1885. See State ex rel. Smith v. Burbridge, 24 Fla. 112, 3 So. 869. See also Chapters 3955 *et seq.,* Acts of 1887. But Section 8, Article VIII, necessarily implies that the legislative powers stated therein, like all legislative powers, are to be exercised subject to other applicable provisions and principles of organic law, such as the "inalienable right" of "acquiring, possessing and protecting property," and the rights to the equal protection of the laws, to due process of law, to just compensation for property taken for public purposes, and to judicial remedy by due course of law for any injury done. Sections 1, 4 and 12, Declaration of Rights; Fourteenth Amendment to the Federal Constitution. See Consolidated Land Co. et al. v. Taylor et al., 88 Fla. 14, 101 So. 280; Paul Bros et al. v. L. B. and L. Special Road and Bridge District, et al., 83 Fla. 706, 92 So. 687; Myles Salt Co. v. Bd. Com'rs of I. and St. M. Drainage Dist., 239 U. S. 478, 36 Sup. Ct. 204, 60 Law Ed. 392. See also Getzen et al., v. Sumter County, 89 Fla. 45, 103 So. 104.

It has been repeatedly held by this Court that the broad legislative powers stated in Section 8, Article VIII, of the Constitution are subject to other applicable provisions and principles of organic law. Brown v. City of Lakeland, 61

Fla. 508, 54 So. 716; Munroe v. Reeves, 71 Fla. 612, 71 So. 922; State ex rel. Nuveen v. Greer, et al., 88 Fla., 249, 102 So. 739; City of Bradenton v. State, et al., 88 Fla. 381, text 384, 102 So. 556; State ex rel. David v. City of Stuart, 97 Fla. 69, text 106, 120 So. 335; MacGuyer et al. v. City of Tampa, 89 Fla. 138, 103 So. 418; State ex. rel. Johnson v. Johns et al., 92 Fla. 187, 109 So. 228; State ex rel. Johnson v. City of Sarasota, 92 Fla. 563, 109 So. 473. See also Pierson et al. v. Long, 103 Fla. 383, 137 So. 232; City of Jacksonville v. Bowden, 67 Fla. 181, 64 So. 769.

"The implied limitations contained in a Constitution are as much a part of the organic law and are as effective as those which are expressed." Jackson v. Jackson, 90 Fla. 563, 107 So. 255; State ex rel. v. Greer, 88 Fla. 249, 103 So. 739, 37 A. L. R. 1298.

"The rights of individuals are measured by constitutional provisions and not by statutes that in terms or by practical operation invade private rights." Cawthon v. Town of DeFuniak Springs, et al., 88 Fla. 324, 102 So. 250.

Throughout the history of statutory municipalities in the Territory and in the State of Florida, prior to the adoption of the Constitution of 1885, the incorporation of a city or town by a special or local law or under the general law, has been of limited contiguous territory inhabited by people who occupy the area incorporated as a community, though there may be within the corporate limits relatively small or not excessive areas that are not actually occupied or improved. When the present Constitution embracing Section 8 of Article VIII, was promulgated, August 3, 1885, and adopted at the general election in November, 1886, to become effective January 1, 1887, the universal practice in incorporating municipalities, whether by special or local laws or under the general law, had been that the boundaries of a city or town should not embrace relatively large areas

of land not occupied or improved and having no reasonable relation to the prospective growth of the municipality or to its needs or convenience. This continued to be the practice in enacting local charters and in forming municipalities under the general law until a different policy was pursued in establishing some municipalities in very recent years. The incorporations of municipalities had continuously from 1821 until recently embraced only land occupied by settled communities of residents including perhaps relatively small areas of unoccupied or unimproved land that would be useful and convenient for future expansion as the municipality might reasonably be expected to grow, all the land included being actually or potentially benefited by being included in the municipality. And in making territorial additions to municipalities, the policy and intent of the law, and the practice under the law had been to add only so much adjacent territory as was fairly required or useful for reasonably anticipated municipal purposes, which added territory could receive at least some substantial benefit from being included in the municipality. Certainly, when the present Constitution was adopted, permitting special legislation for the incorporation of municipalities, it was not the intent of the organic or statutory law of the State, or the practice thereunder, that there should be included in a municipality relatively large areas of wild or unoccupied lands wholly unsuited for and not desirable or needed for municipal purposes, with no reasonable hope of municipal expansion to cover any considerable portion of the unoccupied or unimproved land included in or added to the municipality. The inclusion of large areas of rural lands in a municipality solely or largely for the purpose of municipal taxation, when such areas cannot reasonably receive any substantial benefit whatever, from the municipality, and the rural lands so included are not actually or potentially useful to the munici-

pality except for taxation, is not within the intent of the legislative power stated in Section 8, Aritcle VIII, of the Constitution. Such an inclusion of large areas of lands not actually or potentially useful for municipal purposes except for taxation without any corresponding benefit, whether the incorporation is by special or local laws under Section 8, Article VIII, or under general laws for the incorporation of municipalities, enacted pursuant to Section 24 of Article III of the Constitution, is an exercise of governmental authority not contemplated or permitted by the Constitution, and is a violation of the organic rights of the owners of such property to protection from the taking of their property by taxation without any compensation whatever to the owners who or whose property so included, can receive no benefit governmental or otherwise from the municipality in return for such taxation. See State ex rel. v. Eidson, 76 Texas 302, 13 S. W. 263, 7 L. R. A. 733; 43 C. J. 115. In this case the population is very small and the area of wild land incorporated in the town is relatively great.

It therefore seems clear that the provisions of Section 8, Article VIII, of the Constitution of 1885 did not when adopted in 1886, and do not now, contemplate or intend that the Legislature shall have the power to include in a municipality and to tax for municipal purposes relatively large or excessive areas of wild or unimproved or unoccupied lands that have no fair relation to any present or potential need or convenience for reasonable growth of the municipality within a time that would fairly justify such inclusion, when the lands so included and taxed can receive no benefit from the municipality. The necessary intendments of Section 8, Article VIII, of the Constitution of 1885 are that its provisions relating to a power to establish municipalities, which had for many years been exercised by the Legislature, shall

be interpreted and applied as theretofore with due regard for municipal needs and benefits, and to property rights; and that the Legislature shall so exercise the power conferred as to effectuate the organic intendments by providing municipal governments and advantages as future growth and development may require without violating property rights secured by other provisions of the same Constitution. Arbitrary and oppressive legislative action is not contemplated by the Constitution; and the violation of property rights by a statute may be prevented or redressed by due course of law. See Paul Bros. et al v. L B. & L. S. Road and Bridge Dist., et al. 83 Fla. 706, 92 So. 697; Nichols v. Coolidge, 174 U. S. 531; text 542, 47 Sup. Ct. 710, 71 L. Ed. 1184.

As the boundaries of municipalities are ordinarily for legislative determination subject to applicable organic provisions designed for the protection of private property rights, the legislature has a liberal range of law-making discretion and judgment in defining the area of municipalities, even thought relatively small areas be included which may not be immediately benefitted and such inclusion may be a hardship or injustice to the owners of the relatively small areas included in a municipality and the courts should not interfere except when judicial relief may be fairly and appropriately afforded, in plain cases of abuse or power resulting in a flagrant violation of substantial organic property rights that have not been lost by waiver, laches, acquiescence, estoppel or otherwise. See principles announced in Paul Bros. v. L. B. & L. Special Road and Bridge Dist., 83 Fla. 706, 92 So. 687; Getzen et al. vs.Sumter County, 89 Fla. 45, 103 So. 104; State ex rel Johnson vs. City of Sarasota, 92 Fla. 563, 109 So. 473; State ex rel Davis v. City of Stuart, 97 Fla. 69, 120 So. 335; State ex rel. v. City of Eau Gallie, 99 Fla. 579, 126 So. 124; Consolidated

etc. v. Tyler 88 Fla. 14, 101 So. 280; Town of Boynton v. State, 103 Fla. 1113, 138 So. 639; State ex rel v. City of Ft. Lauderdale, 102 Fla. 1019, 136 So. 889. See also State ex rel. v. City of Homestead, 100 Fla. 354, 361, 130 So. 28.

If organic property rights are violated by including within the corporate limits of a municipality large areas of wild or unoccupied but cultivated rural land, that is not presently or potentially needed for municipal purposes, and such lands cannot reasonably receive any substantial benefits whatever from being included in the municipality, the owners of such property have, under Section 4, Declaration of Rights, and organic right to a judicial remedy by due course of law for the injury done by municipal taxation of private property that is included in a municipality by an undue exercise of governmental power or authority or by a violation of the intent of the organic law, where the organic right to appropriate remedy has not been lost by acquiescence or otherwise.

Where an existing organic right to a judicial remedy for injury done is duly shown in appropriate proceedings as is contemplated by Section 4, Declaration of Rights, it is the province and duty of the courts to establish the right and apply the remedy by due course of law; and such judicial province and duty are as potent when an organic property right has been violated pursuant to legislative action in the incorporation or extension of municipalities as in any other violation of organic rights. The legislative power is no more paramount to the constitution in establishing municipalities under the organic provision of Section 8, Article VIII, than it is in the exercise of any other legislative power; and in appropriate proceedings it is the duty of the courts, in adjudicating litigated rights, to interpret and effectuate the express and implied controlling provisions of organic law, even though enactments be thereby ren-

dered ineffectual in order that the constitution shall control both legislative and judicial action.

The constitution provides that "cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits," "and all property shall be taxed upon principles established for State taxation." Section 5, Article IX. Among the principles established for State taxation are "a uniform and equal rate of taxation" and "a just valuation of all property that is subject to taxation. Section 1, Article IX. The organic requirements for "a uniform and equal rate of taxation" and "a just valuation of all" property, do not forbid but contemplate proper classifications of property in making just valuations for taxation. See Hayes v. Walker, 54 Fla. 163, 44 So. 747; State v. Sarasota, 92 Fla. 563, 109 So. 473; State ex rel. v. City of St. Petersburg, 106 Fla. 742, 144 So. 313; State ex rel. v. City of Miami, 103 Fla. 53, 137 So. 261. Classifications of property to secure just taxable valuations, do not, however, validate municipal taxation of lands which cannot legally be included in the municipality as a particular taxing unit. Therefore where lands are illegally included in a municipality, and are taxed for municipal purposes even by classification to secure just valuations, such invalid inclusion may not be cured by classifications of property to secure just valuations for taxation in the municipality, since the lands, when illegally included in the municipality, cannot lawfully be taxed at all for municipal purposes which cannot be of any benefit whatever to the lands or to their owners, when the owners of the lands are not by acquiescence or otherwise estopped to invoke a remedy for the illegal inclusion of the lands in the municipality. See State ex rel. Hilton v. Village Buhl, 150 Minn. 203, 184 N. W. 850.

The principles of law herein stated are consistent with previous decisions of this court and are not inconsistent with the decisions in other states similar to the leading case of Kelly v. City of Pittsburgh, 104 U. S. 78, 26 L. Ed. 658, where it was not shown that the lands included within the corporate limits of *a large city* were not wholly beyond the potential needs of the city, or that such lands could not reasonably receive some benefits from the municipality. See also State v. Kansas City, Mo., 233 Mo. 162.

Here the land area in proportion to the population is much larger than in State ex rel. v. City of Sarasota, 92 Fla. 563, 109 So. 473; and the area shown in the latter case was subsequently reduced by Chapter 13402, Acts of 1927. Co-relators are not estopped by acquiescence as in State ex rel. v. City of Eau Gallie, 99 Fla. 5179, 126 So. 124.

The constitution provides that "the legislature shall provide for a uniform and equal rate of taxation and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious, or charitable purposes," and that "the legislature shall authorize the several counties and incorporated cities and towns in the State to assess and impose taxes for county and municipal purposes and for no other purposes, and all property shall be taxed upon the principles established for State taxation." Sections 1 and 5, Article IX.

These organic provisions do not contemplate or authorize the taxation of property when such taxation would violate organic provisions which forbid the taking of property without due process of law or without just compensation or by a denial of the equal protection of the laws. Any organic provision should be interpreted in connection with

other organic provisions which affect the same subject matter, so that all such provisions affecting a subject may have appropriate application, even though one provision may modify or exclude another provision from operation in some classes of cases.

The quoted provisions of the State constitution do not and cannot authorize the taxation of property for municipal purposes when such taxation would in effect deprive any person of property without due process of law, or would take property without just compensation, or would deny the equal protection of the laws, in violation of the Fourteenth Amendment to the Federal Constitution and of sections 1 and 12, Declaration of Rights of the State Constitution. And such organic provisions may be violated where large areas of rural land, are included in a municipality, when such lands are not needed or useful for any actual or potention municipal purpose whatever except to be taxed without any present or prospective compensating benefits to the lands or to their owners, and the rights of such owners have not been waived.

Where relatively large or grossly excessive areas of wild, unoccupied lands are included within or added to a municipality, and the lands are not needed or useful for any municipal purpose except for taxation, and such lands or their owners cannot receive any actual or potential benefit from the incorporation of the lands in the municipality, the owners of such lands, in the absence of waiver or estoppel, are entitled to "have remedy by due course of law," for the injury done by unjust taxation of such lands; and the courts are required to administer right and justice by appropriate procedure under the law. Section 4, Declaration of Rights, Constitution of Florida.

The remedy by due course of law, "for any injury done," required by the organic section, depends upon the essential

facts involved and the applicable rules of law and procedure, but the remedy should be effective.

If an Act incorporating or adding territory to a municipality, is invalid in whole or in severable part because it illegally includes relatively large or grossly excessive areas of rural lands in a municipality, or is otherwise invalid, *quo warranto* might be invoked by proper relators who have not lost their right to a remedy by acquiescence or otherwise. See State ex rel. v. City of Stuart, 97 Fla. 19, 120 So. 335; Town of Boynton v. State ex rel. Attorney-General et al., 103 Fla. 1113, 138 So. 639; State ex rel. v. City of Homestead, 100 Fla. 354, 361, 130 So. 28; State ex rel. v. City of Eau Gallie, 99 Fla. 579, 126 So. 124. Where no adequate remedy is afforded land owners by proceedings at law, for excluding lands from illegal municipal taxation, courts of equity may in proper cases by appropriate precedure and decrees, pursuant to controlling principles of law, in the absence of estoppel, relieve particular lands that are illegally included in municipalities from unjust taxation therein for purposes that cannot in any way actually or potentially benefit the lands or their owners and the lands cannot be useful for any proper municipal purpose.

Even though courts of equity might not be authorized by law to change the boundaries of, or to exclude lands from municipalities, yet courts of equity in proper cases may enjoin illegal taxation by municipalities when the remedy at law is inadequate; and this principle of law is as applicable to municipal taxation of lands illegally included in a municipality as it is to any other illegal taxation, where the lands are not presently or potentially needed for municipal purposes and no substantial benefit whatever, governmental or otherwise, can accrue to the lands or their owners by reason of being included in a municipality, and the taxes levied on the lands amount to a taking of property without due

process of law or without just compensation. See principles stated in Consolidated Land Co. v. Taylor, 88 Fla. 14, 101 So. 280; Myles Salt Co. v. Bd. of Com'rs I. & St. M. Drainage Dist. 239 U. S. 478, 36 Sup. Ct. Rep. 204, 60 L. Ed. 392.

In the case of State ex rel. v. City of Stuart, *supra,* we were considering the inclusion within the corporate limits of the City of Stuart lands separated from the city proper by the broad St. Lucie river, and that were alleged to be without any benefits from their inclusion, with no convenient and ready way of communication with the built-up portion of the city, and the inhabitants of which were supplied with school facilities, mail and telephone communication through Jenson, Florida. Neither was there any sufficient answer by respondent setting forth any benefits to the lands in question, or other legal justification for such lands being included in the corporate limits. In this case the amended answer sets forth certain definite benefits that some of the lands of the co-relators receive from the City of Avon Park, some of these lands being in close proximity to the built-up portions of the city, and that large numbers of the citizens and owners of property in the enlarged area are not objecting, but are desirous of having the present lines of the city remained as fixed by the Charter Act. In the Stuart case, Chapter 11750, Acts of 1925, did not abolish the old city and establish a new city as in this case, but merely added territory to the existing municipality. State ex rel. v. City of Stuart, 97 Fla. 69, 120 So. 335.

In this case the Attorney-General is a relator, and property owners in the municipality are co-relators. The Attorney-General does not pray for an ouster of the municipality from all the territory included therein under Chapter 10320, Acts of 1925, and Chapter 12514, Acts of 1927, but the prayer of the information in the nature of *quo warranto* is for "due process of law in this behalf of the

City of Avon Park, a municipal corporation of Florida, the respondent, to answer to the said State, and to the co-relators herein by what warrant or authority of law it claims to exercise, employ, and perform the functions, powers, privileges and franchises of a municipality in, upon and over the lands of the co-relators herein before set forth and described, and that the Court will declare that the said City of Avon Park is unlawfully usurping, exercising and enjoying the functions, privileges, powers and franchises of a municipality over said lands, contrary to the Constitution and Laws of the State of Florida, and that it be ousted therefrom."

The lands of the co-relators as stated in the information are separate parcels in various parts of the territory that was incorporated into the municipality by the stated Acts of 1925 and 1927, and are not separated as a whole from other lands in the municipality by any natural barrier between the old and new limits of the municipality, such as by a wide, navigable river as in the case of State ex rel. v. City of Stuart, 97 Fla. 69, 120 So. 335. See also Town of Boynton v. State ex rel. Attorney General et al., 103 Fla. 1113, 138 So. 639.

Section 3049 (1916) Compiled General Laws, provides that when any incorporated town containing less than 150 qualified voters shall, owing to extent of territory, have embraced within its limits any lands which may from distance or other cause be virtually or commensurately excluded from the benefits of such municipal organization, it shall be lawful for any owners of such lands or three-fourths of them desiring to have the same excluded from such corporation limits and jurisdiction, to invoke stated judicial procedure to exclude such lands from the municipality. See Town of Ormond v. Shaw, 50 Fla. 445, 39 So. 108; Welch v. Town of Cottondale, 61 Fla. 470, 54 So. 594;

Heebner v. Orange City, 44 Fla. 159, 32 So. 879; Phillips v. Town of Altamonte Springs, 92 Fla. 862, 110 So. 460; City of Ocoee v. West, et al., 102 Fla. 277, 130 So. 9; City of Ocoee v. Beggs, 102 Fla. 275; 135 So. 557.

The laws of this State do not prescribe a statutory remedy for excluding lands from municipalities having 150 or more qualified electors when such lands from distance or other cause are virtually or commensurately excluded from the benefits of the municipality, so in the absence of a statutory remedy and in cases where *quo warranto* is not applicable, the remedy in proper cases where the law of incorporation is not invalid, may be in equity to enjoin illegal taxation.

As there is no prayer to oust the city from all the territory covered by the Acts of 1925, and 1927, and as the lands of the several co-relators are so scattered and otherwise conditioned that an ouster as to such lands alone is not on this record a proper function of a *quo warranto* judgment, the motions to strike the amended answer are denied, and the demurrer to the amended answer is overruled with leave to the reltators to proceed as they may be advised.

It is so ordered.

TERRELL, J., and CAMPBELL and JOHNSON, Circuit Judge, concur.

BUFORD, J., concurs specially.

BROWN, J., dissents in part.

DAVIS, C. J., disqualified.

ELLIS, J., disabled by illness.

BUFORD, J.. (concurring specially)—I concur in the opinion and have also concurred in the judgment, althought I am of the opinion that the Court could property grant full

relief under the prayer of the Attorney-General in petition in *quo warranto*.

The only reason why the order of ouster is not awarded is because the prayer of the petition only sought the ouster of the municipality as to the particular lands belonging to the co-relators and did not pray ouster of the municipal authority over all the lands added to the territorial area of the City of Avon Park by the Legislative Acts of 1925 and 1927.

While I agree that the relief may be had upon the Attorney-General amending the prayer of information, I think it should be granted under the petition as now framed. If the Acts under consideration were invalid because of the abuse of legislative power in extending the city limits to an arbitrary and unreasonable degree (and the opinion in effect holds they are invalid) then the co-relators are required to bear the burdens incident to being included in the municipality only by authority of an Act of the Legislature which we hold is invalid. It is no answer to this to say that the lands of co-relators could have been properly included in the municipality because of their proximity to the old City boundary line and because of receiving some municipal benefits. That would be true if the Legislature had not attempted to pass an Act including such lands within the muncipality, but it being true would not warrant the City in imposing burdens of municipal taxation of such lands. While the lands of these co-relators might lawfully be taken into the coroporate limits of the City, the co-relators have the right to demand that if they are included they should be included by a valid Legislative Act. Having procured the strong arm of the State in the name of the Attorney General to invoke the writ of *quo warranto* for purpose of testing the legality of the exercise of municipal functions over the property which has not been included

within the City Limits because it could not be included by an invalid legislative Act, they should not be left to appeal to the Attorney General to amend the petition in *quo warranto,* nor should they be relegated to the prosecution of suits in equity to enjoin the City from exercising municipal functions over that property.

BROWN, J. (Dissenting in part.)—In the above opinion Mr. Justice WHITFIELD has made a most valuable and important contribution to the jurisprudence of this State relating to the subject treated, and with the greater part of his able opinion I fully concur. Indeed, it is with a considerable degree of diffidence and trepidation that I dissent in any respect. But I cannot see my way clear to concur in all that is said in the later portion of the opinion with reference to the inadequacy of the remedy of *quo warranto* as applied to the facts of this case, nor can I concur in the conclusion reached.

True it is that this case presents a puzzling and difficult situation to deal with. To grant a judgment of ouster as to the lands of the co-relators and leave the balance of the lands added by the acts of 1925 and 1927 inside the city would be to create a municipal checker-board. But my view is that we should declare those sections of the Acts of 1925 and 1927 extending the boundaries of the city beyond the original pre-existing boundaries unconstitutional and void, under the principles laid down in the Stuart case as the predicate upon which to base the judgment of ouster prayed for by the Attorney General and his co-relators. The sections of the Acts referred to extended the boundaries so as to embrace an area six miles, square or thirty-six square miles, 23040 acres, whereas the pre-existing boundaries embraced an area of only one and a half miles square, containing only 1440 acres. The expanded area was out of all

proportion to the existing population of the municipality, and most of the lands thus added were purely rural in character, consisting largely of wild and unoccupied lands, and of a considerable area covered by orange groves, which could not be benefitted in any appreciable degree by being taken into the city, and which were not necessary to the reasonably anticipated growth and needs of the city, which city in 1925 had a population of only 1534, and, with the added territory had, as late as 1930, only 3,335, inhabitants.

While a small portion of the territory immediately adjoining the original city limits might have been legitimately annexed to the city as it existed prior to the Act of 1925, such a wholesale and extensive enlargement of the city's boundaries as was made by the Act of 1925 (and as re-enacted by the Act of 1927) was, to my mind, such an abuse of legislative power and such an invasion of the property rights of the co-relators as to render these sections of the two Acts unconstitutional and void, leaving the city limits just as they existed before the Act of 1925 was adopted, and thus furnishing an adequate ground for the institution of this *quo warranto* proceeding by the Attorney General and those co-relators whose lands were outside the range of municipal benefits and were thus unconstitutionally attempted to be taken into the city and subjected to the burden of municipal taxation, so that the city might be ousted from the exercise of municipal powers over such lands. Of course, this Court has no authority to establish municipal boundaries. As was said in the Stuart case, "only the Legislature can draw the line," but if the line is drawn constitutes a palpable and unreasonable invasion of the constitutionally protected property rights of the owners of the added territory, the courts can in *quo warranto* proceedings strike down the line thus unconstitutionally drawn, and leave it to the Legislature to draw a new line.

The writer is doubtful of the power of courts of equity to enjoin the collection of taxes on the lands in question so long as they remain within the city boundaries and are taxed as the same rate as other lands in the city are taxed. We have held that injunction does not lie to test the legal existence of a corporate franchise, and that not collateral attack can be made upon the existence of a municipal corporation. See State ex rel. v. City of Sarasota, 92 Fla. 563, 109 So. 473, wherein it was also said: "in some of the states where a municipality is required or allowed to legally tax farm or rural lands within its limits at a different rate from that assessed against property in the built-up portions of the city, the remedy by injunction is permitted where the same tax rate is imposed on such outlying lands receiving no city benefits as to those that do; but such remedy is not available in this State, where all property within the municipal limits must be taxed·at an 'equal and uniform rate,' and upon a 'just valuation.' Art. 9, Sections 1 and 5 of State Constitution. Injunction, however, may lie, in proper cases to enjoin the unlawful or unconstitutional use of powers granted by the State, though it cannot be used to test the legal existence of public or corporate franchises."

My thought is that if the property in question is lawfully and constitutionally within the city limits, the city cannot be enjoined from taxing it for municipal purposes at the same rate as all other property within the city, upon a fair and "just valuation," but if it has not (as I believe) been lawfully and constitutionally added to and embraced within the city boundaries, then *quo warranto* lies for the purpose of ousting the city from exercising any municipal powers thereover. And the mere fact that all the property owners did not join in the proceedings should not prevent us from according relief to the several hundred who did join as co-relators with the Attorney General. There may be cases

where property within the limits of the a city may be zoned or classified for purposes of taxation as to bonded indebtedness, as in Miami and St. Petersburg cases, but here the city is asserting the right to tax this property for all municipal purposes, except for any bonded debt that may have been created subsequent to January, 1926.

Nor can we in this case hold the sections of the Acts of 1925 and 1927, enlarging the city limits, good in part and bad in part, without violating the legislative intent. If we held those sections bad as to the lands' of the co-relators and good as to the remainder, it would, as above stated, create a municipal checker-board, so far as area is concerned. Those sections of the acts must be either void in toto or valid in toto. The Legislature could never have intended such a situation as would result from holding those sections invalid as to the lands of the co-relators and valid as to the balance of the area. To my mind, they are unconstitutional and void as a whole, leaving the city's territory as it was before they were enacted, and that this court should so declare, and then proceed to grant the judgment of ouster as prayed for.

## ON REHEARING

PER CURIAM—In this case the last opinion was filed on March 10th, 1933, in which the motion to strike and the demurrer to the amended answer were overruled, with leave to the relators to proceed as they may be advised.

The information in the nature of *quo warranto* was amended by the Attorney General as relator so as to test the right of the municipality to exercise municipal functions over all the territory which was added to the City of Avon Park by the Legislative Acts of 1925 and 1927.

The cause was re-argued after the amendment to the information by the Attorney General.

In the consideration of this case Circuit Judge J. B. JOHNSON is sitting in lieu of Mr. Chief Justice DAVIS, disqualified.

After having fully considered the briefs presented and the argument of counsel Mr. Presiding Justice WHITFIELD, Mr. Justice TERRELL and Circuit Judge JOHNSON are of the opinion that the demurrer to the amended answer should be overruled. While Mr. Justice ELLIS, Mr. Justice BROWN and Mr. Justice BUFORD are of the opinion that the demurrer to the amended answer should be sustained. This is an original proceeding. It requires a majority of the Court sitting to determine affirmatively that a demurrer to a pleading be sustained. Therefore, the Court being evenly divided, the demurrer here to the amended answer must be overruled.

The answer being held good against attack by demurrer presents issues of fact which in *quo warranto* proceedings the parties have the right to have determined by jury trial. This Court is without facilities for impaneling juries and conducting jury trials and for that reason this cause will now be dismissed without prejudice to the parties to institute like proceedings in the Circuit Court for the purpose of determining and having adjudicated the questions involved.

It is so ordered.

WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., and JOHNSON, Circuit Judge, concur.