ERVIN, Justice
(dissenting in part, concurring in part).
In the 1960’s Gulf American Corporation developed a massive tract of closely knit subdivisions in a previously undeveloped area of Lee County. The development was known as Cape Coral. In 1970, the Legislature passed a Special Act, Ch. 70-623, tentatively establishing and organizing the “City of Cape Coral.” Actual implementation of the Act was dependent upon approval through referendum of the people residing within the proposed City limits. The referendum passed successfully.
Although the subdivision area comprised 30 square miles in area, the boundaries set up by Special Act encompassed an area of 100 square miles. The additional 70 square miles are very sparsely inhabited, and City services to this area are severely limited at the present time. Various people living in these outlying no-service areas petitioned the Lee County Circuit Court for a writ of Quo Warranto directed against the City, contesting the City’s right to jurisdiction over them.
The trial court ultimately declared the act organizing and establishing the City of Cape Coral constitutional and concluded,
“By virtue of the facts set forth above and the extensive viewing of the premises, which constituted 46 miles of riding in the area in question, the Court reaches the conclusion that the Defendant has established a need for the city and the benefits to be derived for most of the properties lying south of State Road 78 and Pondella Road. That the Defendant has established benefits to two of the Parcels here involved, though same may be delayed into the future a reasonable time. The rest of the lands the Court finds are too remote from the populated area and too remote from any city benefits.
“The Court further finds that to order an ouster of some of the lands would create an hiatus, leaving certain acreage completely surrounded by other lands not ousted. The case of the City of Coral Gables, et al v. State ex rel. Landis, Atty., et al. [122 Fla. 17], 164 So. 535 indicates that this problem should not affect the rights of the Plaintiffs herein where it is so obviously an infringement upon the property rights of an individual, and this Court finds that to allow these lands to remain in the corporate limits would amount to an unlawful taking of the property rights of certain Defendants, it is therefore,
“ORDERED, ADJUDGED AND DECREED, that the property of the Plaintiffs Stuckey, Jackson, Morris, Nelson, Jeffcott and Maxwell as described in Paragraph 5 C, D, E, F, G and H of Plaintiffs’ Complaint are hereby ousted and declared not to be within the corporate limits of the City of Cape Coral, it is further,
“ORDERED ADJUDGED AND DECREED that the Lee property described in Paragraph 5 A and B of Plaintiffs’ Complaint is ordered included in the corporate limits of the City of Cape Coral; however, said City is ousted from the right and jurisdiction to tax *483 said properties until such time as roads, sewer and water have been made available to said lands, which is hereby determined to mean road frontage on a completely graded road and the utilities mentioned within fifty feet of the closest property line.”
I concur with the trial court’s determination that the legislature’s special act establishing the City of Cape Coral is constitutional. Article VIII, Section 11(a) of the Florida Constitution (1968) grants to the Legislature of the State of Florida the power to establish and abolish municipalities by either special or general law. This authority is not unlimited but must be exercised within the framework of other provisions of the Constitution having to do with due process and equal protection. See State v. City of Avon Park, 108 Fla. 641, 149 So. 409 (1933); State ex rel. Davis v. Town of Lake Placid, 109 Fla. 419, 147 So. 468 (1933); State ex rel. Davis v. City of Stuart, 97 Fla. 69, 120 So. 335 (1929). I recognize the principles espoused in these aforecited cases but find also that these cases are inapposite to the situation at bar.
I feel we should reverse the judgment of the trial court in ousting any of the properties involved in this suit. Cape Coral, pursuant to the recognition accorded it by a legislative charter is accepted as a growing community with the potential to become an important residential area of some 275,000 lots in the development. More than 240,000 lots have been sold indicating sufficient interest to believe the municipality will grow in population. Florida is in a period of growth, not in the depression period of the 1930’s. The trial court has misapplied the aforecited 1930 cases to the instant circumstances pertaining to Cape Coral.
Since most of the lands located within the City of Cape Coral are part of a comprehensive development program, all such lands should be included in one governmental operation.
In City of Fort Lauderdale v. Town of Hacienda Village, Inc., 172 So.2d 451, 452, this court opined:
“[1,2] Short of invading private property rights, the Legislature has plenary power to fix municipal boundaries and to establish municipal jurisdiction over any part of the State. It is for the Legislature to determine when and to what extent a particular area of the State shall be incorporated. There is no purely private right to have any particular area invested with the powers of municipal government. The ultimate decision in such matters is purely a legislative function which the people have granted to the State Legislature by the Constitution itself. Article VIII, Section 8, Florida Constitution, F.S.A. Incidentally, we are not here dealing with the possible impact of Article VIII, Section 11, Florida Constitution, which affects only Dade County.
“[3] In performing these functions the Legislature is empowerd to fix boundaries to accommodate both the present needs and furture growth of a municipality. The urbanization of the State is evidenced by the extensive development of metropolitan areas in the environs of large cities. This condition not only justifies but, in many instances, actually requires a long range legislative perspective in planning the orderly development of these metropolitan areas. Gillete v. Tampa, Fla., 57 So.2d 27.”
The above principle enunciated in Town of Hacienda, supra, is particularly applicable to the instant case. The whole area of the City of Cape Coral is in the process of being developed and the need for long range planning for orderly development is a necessary ingredient.
At the present time the record indicates there is sufficient municipal need and potential to justify a municipal government for Cape Coral rather than to dump many of the residential planned subdivision lots on Lee County a non-charter county. The *484 average annual local ad valorem city taxes seem miniscule — $8.00 per lot.
Although factually the case of Gillete v. City of Tampa, S7 So.2d 27 (Fla.1952) is dissimilar, therein this court did set out certain principles which I believe are properly applicable to the case sub judice. Therein this court quoted with approval the following language found in Henrico County v. City of Richmond, 177 Va. 754, 15 S.E.2d 309:
“Moreover, it is no answer to an annexation proceeding to assert that individual residents of the county do not need or desire the governmental services rendered by the city. A county resident may be willing to take a chance on police, fire and health protection, and even tolerate the inadequacy of sewerage, water and garbage service. As long as he lives in an isolated situation his desire for lesser services and cheaper government may be acquiesced in with complacency, but when the movement of population has made him a part of a compact urban community, his individual preferences can no longer be permitted to prevail. It is not so much that he needs the city government, as it is that the area in which he lives needs it.”
This important case needs careful examination because of its tremendous impact on other developing planned Florida cities— not a precipitous ouster washout. Advance planning to meet the area’s potential urban needs, including transit, zoning, ecological, health, police, fire, sewage, water, garbage and other needs, is highly essential.
I make note of the fact that county charter governments are now sanctioned by the 1968 Constitution in order to meet metropolitan needs of community urbanization either existing or reasonably anticipated, even though outlying rural areas are embraced. I see little reason why the Legislature cannot now embrace for municipal purposes large areas of outlying lands in a developing community area similarly as if they were included in a county charter metro government. It appears to me ouster of outlying, remote lands which have a clear potential of community urbanization is no longer the appropriate remedy. Instead, temporary tax relief only should be granted where it is obvious there is no present correlation between municipal services and taxes assessed therefor.
The problems of population growth and urbanization cannot be solved by ignoring them — by nostalgically believing that Florida’s developing areas are still frontiers and wildernesses impervious to residential settlement. County charters and municipal governments are accepted as modern methods of coping with local population growth and urbanization in Florida communities. We should not reject or emasculate them until it is clear beyond reasonable doubt that there is no present or potential need for their utilization. The record herein is devoid of any such conclusive showing.
BOYD, J., concurs.