The legislature enacted Chapter 24,738, Special Acts of 1947, extending the boundaries of the City of Oakland Park. Oakland Park is a little North of Fort Lauderdale, two miles West of the Atlantic Ocean and contained 361 acres of land before its boundaries were extended. Chapter 24,738 extended its North and South boundaries Easterly to intersect the boundary of the State of Florida along the Gulf Stream, thereby adding 674 land acres and a large area of ocean to the city.
Appellants being the owners of a large portion of the annexed land filed an information in the nature of quo warranto, challenging the constitutional validity of Chapter 24,738. The basis of the challenge being that the city of Oakland Park was originally created by Chapter 14,041, Special Acts of 1929, at which time it had a population of approximately 408, that at the time this action was brought, *Page 271 
over twenty years later, it had a population of approximately 800, that all the territory annexed to the city by Chapter 24,738, is wild and undeveloped and does not need municipal benefits; that very little of the new area is traversed by roads; that said lands are of such character that it would require millions of dollars to develop them; that the annexed area is being afforded no municipal benefits and that there is no occasion for furnishing any until the lands are developed; that the city has no facilities to service said lands with municipal benefits; that a portion of said lands are low and swampy and present conditions do not justify their development; that the growth of the city for the past twenty years and the large area of undeveloped lands within its borders, at the time it was enlarged, does not justify the addition of said lands, for the reasonably anticipated growth of the city. So the only deduction that one can reasonably draw is that its boundaries were extended for revenue only.
Issues were made on the pleadings, a jury was waived by stipulation of counsel, evidence was taken by the court and on final hearing the validity of the act was upheld and the information was quashed. In support of his order quashing the information, the trial court found, among other things, that the annexed lands had received no services or tangible benefits from the municipality, but that they were in "direct line of development and fully susceptible of urban development and the reception of the benefits from such development. The land is not suited for farming purposes. It will be used most advantageously to provide for urban growth rather than rural development * * *, that it can be furnished municipal benefits in proportion to any lawful tax that may be imposed upon it, and that it should lawfully be within the municipality to meet proper needs for future reasonably expected growth and authorized activities." The instant appeal is from the final judgment so entered.
The question for determination is whether or not the lands brought into the city of Oakland Park by Chapter 24,738, are sufficiently populated or industrialized to make it necessary or desirable that they be provided with municipal conveniences.
In State ex rel. Landis v. Town of Boynton Beach, 129 Fla. 528,177 So. 327, this Court held that the elements essential to constitute a municipal corporation comprehended an area of contiguous territory sufficiently populated and industrialized to make it necessary or desirable that it be incorporated into a municipality in order that additional and better governmental services, such as police protection, sanitary improvement, lights, water, electricity, sewage disposal, paved streets and other municipal conveniences be provided. These services may be furnished by the municipality or by private parties under contract with the municipalities.
This rule would apply with equal force to large areas of wild and undeveloped lands that are annexed to a municipality already created. It is shown that more than seventy-five per cent of the lands in question belong to the relators, that they are wild and unoccupied, that they are all low and unfit for agricultural or horticultural purposes, that there is only one house and one shack on them, that a portion of said lands is mangrove swamp and will be very expensive to develop, that they are receiving no benefits from the city and the primary reason given by the court for including them in the city is that they are, "in direct line of development and are susceptible of urban development and reception of benefits from such development."
We do not think this is sufficient warrant for annexing lands to the city. Against the showing that the city's population has increased approximately 400 in more than twenty years, this would seem to be an irrefutable answer to any necessity for bringing them in. With only one house and one shack on the lands there is certainly no showing that police protection, water, light, electricity or other municipal services are urgent. There must be a present showing of population, industrialization or similar reason to authorize the bringing of large areas of lands into a municipality. *Page 272 
Potential development is not enough. The very reason for the success of a good number of ouster cases in this state of late years, was lack of municipal benefits. At the rate the city of Oakland Park is growing, it may be years before there will be sufficient reason to annex the lands in question to the city. In fact, other enterprises may cause it to take a spurt in another direction and it may never be necessary to annex the lands in question.
The legislature is without power to create a municipality out of sunshine, bathing beaches, custard apple swamps and low lands that have no potential value for any purpose until large expenditures are made to fill and drain them. Municipalities are not usually authorized to engage in such expenditures. You cannot bring new areas into a municipality except on condition of furnishing the occupants municipal conveniences. There are no occupants on the lands involved in this case and there is not the slightest showing from any owner that the annexation was desired by them.
For these reasons we think the legislature exceeded its power when it enacted Chapter 24, 738, Special Acts of 1947. We are also of the view that the trial court committed error when he approved the validity of said act and denied the motion for judgment of ouster, notwithstanding the answer.
Reversed with directions to reinstate the information and uphold the Act.
CHAPMAN, THOMAS and SEBRING, JJ., concur.
BARNS, J., concurs with opinion.
ADAMS, C.J., dissents.