57 So.2d 27 (1952)
GILLETE et al.
v.
CITY OF TAMPA.
Supreme Court of Florida, en Banc.
February 22, 1952.
W. Marion Hendry, Edward I. Cutler and Cutler & Mittle, all of Tampa, for appellants.
Ray C. Brown, John P. Corcoran, Jr., of Brown, Brown & Corcoran, Ralph A. *28 Marsicano and Joseph F. Miyares, all of Tampa, for appellee.
ROBERTS, Justice.
This is an appeal from a final decree entered adversely to appellants in a suit instituted by them for declaratory relief and also to enjoin the annexation to the City of Tampa of certain lands contiguous thereto.
The annexation proceedings here in question were taken in accordance with the provisions of Chapter 26270, Laws of Florida, Special Acts of 1949. This Act defines and describes by metes and bounds an area which it designates as the "City of Greater Tampa" area, which area includes the territory within the city limits of the City of Tampa, as established by Chapter 23551, Laws of Florida, Acts of 1945, and other territory adjacent and contiguous thereto; and the Act, in effect, is a legislative extension of the existing boundaries of the City of Tampa. The actual incorporation of such adjacent territory into the city is, however, made contingent on the approval of such annexation by the property owners residing therein, in the following language: "All or any part of such territory may be integrated into and made a part of the said City of Tampa upon petition of not less than 51% of the qualified electors residing in the territory to be integrated into and made a part of the said municipality, who are registered as freeholders on the registration records of Hillsborough County, Florida. Provided, no part of such territory having an area of less than ten (10) acres may be so integrated, unless such area shall contain not less than twenty-five (25) qualified electors residing in said territory who are freeholders." The Act also provides for the annexation of less than ten acres, under certain terms and conditions, "if such incorporation is deemed practical and expedient and in conformity with the overall plan for extending the boundaries of the City of Tampa into the City of Greater Tampa."
The Act requires the filing of the petition for annexation with the City Clerk of the City of Tampa; the certification thereof by the Supervisor of Registration as to the qualifications in all respects of the signers of the petition; and the certification by the City Engineer as to the legal sufficiency of the description of the area to be annexed. Thereupon, the petition and its appended certificates is required to be submitted to the Board of Representatives of the City at its next regular meeting, which Board is authorized to adopt a resolution setting forth the details of the annexation proceedings and upon the adoption of which, "the area shall forthwith become a part of the City of Tampa".
The area which is the subject of the annexation proceedings with which we are here concerned comprises 160 acres within the limits of the "Greater Tampa" area defined by Chapter 26270; and a petition was duly filed with the City Clerk and was certified to by the Supervisor of Registration and by the City Engineer in accordance with the requirements of the Act, above noted. Thereupon, the appellants, who represent themselves as the owners of 90 acres of land within the area sought to be annexed, instituted suit for a declaratory decree and to enjoin the City of Tampa from passing a resolution integrating the area into the city limits of Tampa pending a determination of the question of the validity of the annexation proceedings. A temporary injunction was issued, and evidence was adduced before the Chancellor, who found that the Act and the proceedings thereunder were valid and, accordingly, dismissed the appellants' bill.
The principal contentions of the appellants here are that the Act is invalid in that (1) the procedures authorized would permit the City of Tampa to summarily annex rural areas of land not suited for municipal purposes, and (2) the procedures authorized are ineffective to change the boundaries of the City of Tampa previously established by Chapter 23551, Laws of Florida, Acts of 1945, fixing by metes and bounds the corporate limits of the City of Tampa. No contention is made that the Act as a whole, providing an "overall plan for extending the boundaries of the City of Tampa into the City of Greater Tampa," is invalid. In this connection, it might be noted that this court can take judicial notice *29 of the rapid growth and increase in population in this state and in the City of Tampa during the decade from 1940 to 1950. Thus, the state increased its population during such decade by 46.1 percent. During the same period, the population of Tampa increased from 108,391 to 124,073. Its deepwater port, flanked by adequate railroads, highways, and airlines, when considered in connection with its accessibility to raw materials and markets, both foreign and domestic, and suitable climate for industrial employees, provide every essential for its continued growth and prosperity, with a corresponding demand for municipal expansion.
It is contended, however, that the particular area here sought to be annexed is presently rural in nature, not thickly populated, and containing swampy muckland, considerable woodland, and undeveloped pasture land; that there is located within the area a dairy and a saw mill; and that, to extend the corporate city limits to include such unbenefitted rural lands would be unconstitutional. The appellee points out that the evidence also showed that most of the area has been platted and laid out in streets, although many of them are unpaved and some have never been physically laid out; and that the tax assessment roll for the year 1950 showed 96 houses in the area involved. We are not persuaded that the fact that some of the area is swampy makes it unfit for urban uses. In this machine age, and with the modern and highly specialized methods of filling and dredging, there are few areas which cannot be adapted to residential or industrial use where there is a community demand for expansion. In fact, what is now Davis Islands  a highly developed residential area in Tampa  was in the not too distant past little more than a mud flat.
While this court is committed to the rule that "there must be a present showing of population, industrialization or similar reason to authorize the bringing of large areas of lands into a municipality", State ex rel. Ervin v. City of Oakland Park, Fla., 42 So.2d 270, 271, and that "wild, unoccupied, unimproved lands so remote from a municipality that they can receive no benefit therefrom" should not be included therein, State ex rel. Landis v. Town of Boca Raton, 129 Fla. 673, 177 So. 293, it must be remembered that the Legislature, in enacting Chapter 26270, must be held to have determined that the area in question is amenable to municipal benefits and a logical extension of the boundaries of the City of Tampa. And while such a determination cannot be upheld if it constitutes "a palpably arbitrary, unnecessary, and flagrant invasion of personal and property rights", State ex rel. Davis v. City of Stuart, 97 Fla. 69, 120 So. 335, 346, 64 A.L.R. 1307, the presumption is in such case that the extension is reasonable and necessary and the burden is upon the objectors to convince the courts that the proceedings are illegal or unreasonable and unnecessary. A.M. Klemm & Son v. City of Winter Haven, 141 Fla. 60, 192 So. 652; Seifert v. City of Popular Bluff, Mo. App., 112 S.W.2d 93.
We think that, in the instant case, the appellants have failed to carry their burden of showing that the proposed extension of the boundaries is unreasonable and unnecessary. While some of the area is vacant and unimproved, the greater portion thereof has been platted and, it must be assumed, held for use or sale as town lots. While not densely populated, there were almost a hundred houses in the area, according to the 1950 tax assessment roll. The evidence, all of which was on the testimony of appellants' witnesses, showed that the city is already supplying water, electricity and gas to the area. Considerably more than one-half of the registered freeholders residing in the area evidenced their desire to obtain other services offered by the city by signing the petition for annexation. And, as stated in Henrico County v. City of Richmond, 177 Va. 754, 15 S.E.2d 309, 321, "Moreover, it is no answer to an annexation proceeding to assert that individual residents of the county do not need or desire the governmental services rendered by the city. A county resident may be willing to take a chance on police, fire and health protection, and even tolerate the inadequacy of sewerage, water and garbage service. As long as he lives in an isolated situation his desire for lesser services and cheaper government may be acquiesced in with complacency, *30 but when the movement of population has made him a part of a compact urban community, his individual preferences can no longer be permitted to prevail. It is not so much that he needs the city government, as it is that the area in which he lives needs it."
As to their second contention, above noted, the appellants argue that, since by Chapter 23551, Laws of Florida, 1945, the Legislature established and defined by metes and bounds the territorial limits of the City of Tampa, such boundaries cannot be legally extended except by a similar statute enlarging the same, so that the method provided by Chapter 26270 is unauthorized and void. There is no merit to this contention.
As heretofore noted, the Legislature in Chapter 26270 defined by metes and bounds the territorial limits of the Greater Tampa area, but left to the resident freeholders of the area the determination of the time at which any part of such extended area should be integrated within the pre-existing city limits. "This court has frequently held that the Legislature may enact a statute complete in itself and provide that it shall go into effect upon the happening of a contingency, such as the affirmative vote at an election provided for in the act." City of Winter Haven v. State ex rel. Landis, 125 Fla. 392, 170 So. 100, 103. And the fact that the Act here involved was contingent upon the approval of the registered freeholders expressed by means of a petition, rather than in an election held for that purpose, does not change the rule. The method of annexation by a municipality of adjoining territory by means of a petition of the property owners in the territory, rather than by means of an election, is in use in many other states. See 11 Oklahoma Statutes Anno. § 484; Wisconsin Statutes 1943, § 62.07; Arizona Code 1939, § 16-701; Pope's Digest (Arkansas) § 9495; Ohio Gen.Code, § 3550; 53 Penn.Stat. § 12221 et seq.; Kentucky Statutes, § 3051; Vernon's Ann.Civ.Stat. (Texas) Art. 1165 et seq.
The other questions presented have been carefully considered, and no reversible error has been found.
For the reasons stated, the decree appealed from should be and it is hereby
Affirmed.
SEBRING, C.J., and TERRELL, THOMAS, HOBSON and MATHEWS, JJ., concur.
CHAPMAN, J., not participating.