SHANNON, Judge.
This is an appeal by the municipality of the Town of Belleair Beach, Florida, from a final decree sustaining objections of the appellees to an annexation of certain lands.
Section 171.04, Florida Statutes 1957, F.S.A. provides in part as follows:
“If any incorporated city or town shall desire to change its territorial limits by the annexation of any unincorporated tract of land lying contiguous thereto and within the same county, it is lawful so to do in the following manner: If such tract contains less than ten registered voters, the council of said city or town shall, by ordinance duly passed and approved as provided by law, declare its intention to annex such tract of land to said city or town at the expiration of thirty days from the approval of said ordinance, * * * If at any time before the expiration of the thirty days, any ten registered voters of said city or town, or any two owners of real estate in the district so proposed to be annexed, shall object to such annexation, they may apply by petition to the circuit court in and for the county in which said city or town is situated setting forth in said petition the proposed proceedings of said city or town, and the grounds of their objection thereto; * * * If, upon the hearing of the said application, the said court shall ■sustain the said objection, the said tract of land shall not be annexed; * * *”
Pursuant to this statute the appellant' sought to annex certain lands by ordinance. ' *172 Objections were filed thereto and the chancellor below heard testimony, following which the decree appealed from was entered. Among the chancellor’s findings of fact were:
“2. The Court further finds that the lands sought to be annexed have been for many years, are now, and because of the existence of a lease agreement of the lands to the Hotel Belleview-Biltmore Operating Company, a Florida corporation, which expires in late 1962, will be, devoted principally to a private club and bathing facility; that because of the indefinite testimony before the Court concerning the Town’s zoning ordinances and building code, the future extension and operation and any future extensions of this private club and bathing facility might be prohibited and materially affected; that the objectors have shown that they do not need any of the services being offered by the Town because all of the required services have long been supplied by the landowner and the objectors have further shown that most of the area involved is not now amenable to the municipal services offered by the Town.
“It is further found that the benefits which the lands sought to be annexed might derive from being incorporated within the Town are highly speculative; that said lands would be unduly burdened with Town taxes, and the annexation of the same to the present Town would be unreasonable and unnecessary, not only to the area sought to be annexed but to the lands within the present boundaries of the municipality.”
The Town of Belleair Beach was incorporated under a general statute in 1950 and at the present time has a population of approximately five hundred. The area sought to be annexed contains approximately thirty acres of which only about an acre and a half constitute land either improved or capable of inexpensive improvement. The remainder consists of a beach with wild and uncultivated tide flats and mangrove swamps. The entire property is being leased by the owners of Belleview-Bilt-more Hotel and operated as the Belleview-Biltmore Cabana Club. This Cabana Club was in existence and being operated prior to the incorporation of the Town of Belle-air Beach. The Cabana Club property is separated from the Town of Belleair Beach by a fence and gate, which gate is closed when the Cabana Club is not in operation. There are no public streets or roads through or in the said property. Improvements consist of twenty-four cabanas, two bathhouses, a clubhouse and a residence. The residence is occupied by the Cabana Club manager who is required to live on the premises at all times so as to protect them and the valuables of the guests. Electricity and telephone service is being supplied by private utility companies, water is furnished by the county water system, and fire protection is furnished by an independent volunteer fire department.
The chancellor made his findings after hearing the witnesses, and there is little, if any, dispute in the record about the facts. From a study of the record it is readily apparent that the appellant could offer little or no service to the annexed territory, and it cannot be said, as it was in Gillete v. City of Tampa, Fla.1952, 57 So.2d 27, 29, that the appellant was already supplying its city’s services to the community:
“We think that, in the instant case, the appellants have failed to carry their burden of showing that the proposed extension of the boundaries is unreasonable and unnecessary. While some of the area is vacant and unimproved, the greater portion thereof has been platted and, it must be assumed, held for use or sale as town lots. While not densely populated, there were almost a hundred houses in the area, according to the 1950 tax assessment roll. The evidence, all of which was on the testimony of appellants’ wit *173 nesses, showed that the city is already supplying water, electricity and gas to the area. Considerably more than one-half of the registered freeholders residing in the area evidenced their desire to obtain other services offered by the city by signing the petition for annexation.”
In State ex rel. Landis v. Town of Boynton Beach, 1937, 129 Fla. 528, 177 So. 327, 329, Mr. Justice Terrell in his opinion stated:
“To incorporate an area such as we have here, three miles long and one-half mile wide, one-third of which is under water, with a maximum of eleven homes and less than forty people, and saddle on it a debt of more than one half million dollars, less than 5 per cent, of which was spent in the affected area, is one of the most flagrant abuses of legislative power that has been brought to our attention. It exhibits a total disregard of the rights of those affected, and imposes a burden that has no relation whatever to the benefits furnished anywhere in the municipality.”
And, again, in State ex rel. Ervin v. City of Oakland Park, Fla.1949, 42 So.2d 270, 271, Mr. Justice Terrell, speaking for the Court, said:
“This rule would apply with equal force to large areas of wild and undeveloped lands that are annexed to a municipality already created. It is shown that more than seventy-five per cent of the lands in question belong to the relators, that they are wild and unoccupied, that they are all low and unfit for agricultural or horticultural purposes, that there is only one house and one shack on them, that a portion of said lands is mangrove swamp and will be very expensive to develop, that they are receiving no benefits from the city and the primary reason given by the court for including them in the city is that they are, ‘in direct line of development and are susceptible of urban development and reception of benefits from such development.’ ”
As shown by the record, only a small portion of the land sought to be annexed can receive any benefits from the appellant, and these benefits are now, and have been, even before the appellant was created, supplied by the appellees. Hence, no error is made to appear in the final decree of the chancellor below.
Affirmed.
ALLEN, Acting Chief Judge, and SMITH, FRANK A., Associate Judge, concur.