## PINELLAS COUNTY v. CITY OF SAFETY HARBOR.
No. 70803.

Circuit Court, Pinellas County.

June 15, 1964.

Page S. Jackson, Clearwater, and John G. Fletcher, II, Dunedin, for plaintiff.

Harold S. Wilson of Ford & Wilson, Largo, for defendant.

JOSEPH P. McNULTY, Circuit Judge.

*Final decree:* This cause came on to be heard upon final hearing to determine the issues framed herein. The facts were stipulated to and are as follows —

(1)  Pursuant to provisions of chapter 153, part II, Florida Statutes, the County Water and Sewer District Law, many more than the required twenty-five registered voters and freeholders in an unincorporated area, embracing several subdivisions, petitioned the county commissioners of Pinellas County to take the necessary steps to create a sanitary sewer district known as "Alligator Creek Sanitary District."

(2)  Thereafter, upon ascertaining the validity of the signatures to the petition, the county commission caused an engineering study to be made to determine the feasibility of such sanitary district, which study was filed and adopted by the commission and found favorably to the creation of the district.

(3)  By a certain ordinance duly adopted September 23, 1963, the defendant City of Safety Harbor annexed certain areas which are outlined on the map filed herein. The significant area with which we are here concerned is that portion of state road 590 sought to be annexed by the ordinance, and which extends 2,700 feet west and south of the western boundary of said city, thence 8,800 feet west through, and bisecting, the proposed sanitary district. It is further significant to note that the easternmost boundary of the proposed sanitary district is more than a mile west of the westernmost boundary of the defendant city — the two areas being connected only by the aforesaid portion of state road 590. It is further to be noted that no portion of any of the subdivisions in the proposed sanitary district were annexed pursuant to the ordinance.

The county commissioners maintain that they are in doubt as to their rights and duties under chapter 153, part II because such rights and duties as they may have under the statute are confined to *unincorporated areas* — and if that portion of state road 590 which bisects the proposed sanitary district has validly been annexed to the city they are in doubt as to their duty to proceed as required by provisions of §153.55, Florida Statutes. Therefore, they pray for a declaratory decree.

The city contends first that plaintiffs cannot maintain this action for declaratory decree because there is no present, bona fide controversy. In this regard, they argue that the suit is pre-

mature for the reason that should the county proceed, pursuant to provisions of §153.55, they may determine that the entire sanitary district is not feasible and unnecessary — in which case the question presented here would be moot.

Secondly, the city argues that procedure under §87.01, et seq. for a declaratory decree is not the proper way to raise the principal issues herein, but that the annexation questioned here can be attacked only by quo warranto proceedings.

Thirdly, and notwithstanding the foregoing, the city contends that the annexation is valid and proper in that all areas described in the annexation ordinance are, and have been validly annexed.

With respect to the city's first contention, this court is of the opinion that the suit is properly brought for declaratory decree. The tests to be applied are clearly set forth in May v. Holley, 59 So.2d 636, and reaffirmed in Bryant v. Gray, 70 S.2d 581. In that latter case it was reaffirmed that — " . . . . there must be some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter . . . . " and " . . . there must be a bona fide dispute between the contending parties as to a present justiciable question."

Applying the foregoing tests, clearly there is a present antagonistic interest in the subject matter. The county commission contends that the entire area in the proposed sanitary district is unincorporated — the city on the other hand contends that a portion of the proposed sanitary district, to-wit, the annexed road, is incorporated.

It was also held in May v. Holley, supra, that there must be a "present, practical need for the declaration". In that regard, the county commissioners are on the marching line and required by provisions of chapter 153, part II to begin the march if the area within the proposed sanitary district is unincorporated. No such mandate exists if the area is not wholly unincorporated. They have a right, under provisions of §87.01 et seq. to have their duties in this regard clarified before they expend public funds and time, as required by the statute, on an effort which may be futile.

The case is clearly distinguishable from City of Hollywood v. Broward County, 54 So. 2d 205. In that case the gravamen of the decision was that the doubts that existed in the minds of petitioners might never have been of real concern since the doubts concerned actions which were not presently required to be taken and which were contingent upon a third agency not a party to said suit performing a condition precedent. In other words the

suit there was premature for the reason that the rights of the parties to that suit were contingent upon the future action of third parties, which action may or may not have been taken at all and which parties were not a party to the suit. Here, no future contingency need occur before the county commission must act or not. All preliminary requirements of chapter 153, part II have been met. Now the county commissioners have no choice — they must, *if the area is unincorporated,* proceed with the public hearings, the fiscal feasibility, and, thereafter, if found to be then feasible to continue, provide for a referendum. Now is the time they must act — now is the time they must know their rights and duties under the statute.

With respect to defendant's second contention, we need go no farther than §87.12 of the statutes, which provides that the existence of another adequate remedy shall not preclude a decree for declaratory relief. However, in this regard, it might be further observed that the incidental determination of the validity or non-validity of the annexation questioned herein should not preclude a declaratory decree if the suit praying therefor is otherwise properly brought.

Coming now to the principal question raised in this action — that is, the validity, vel non, of the annexation of state road 590. First of all, when considering annexation, it appears from a review of all the cases that the courts concern themselves, essentially, with the following questions — whether the expansion is reasonably necessary and practical for the natural growth of the city, and whether the city can reasonably furnish to the area annexed, reasonable municipal services commensurate with any possible tax burden on the area to be annexed. See Ervin v. City of Oakland Park, 42 So. 2d 270 (with concurring opinion of Justice Barnes); Gillette v. City of Tampa, 57 So.2d 27; Town of Belleair Beach v. Thacker, 109 So.2d 171; Town of Mangonia Park v. Homan, 118 So. 2d 585; and Crystal River v. Springs O'Paradise, Inc., 154 So. 2d 727.

Also, it has been laid down that municipal limits may reasonably and properly be extended when they, among other things, furnish the abode for a densely settled community, or represent the actual growth of the municipal corporation beyond its legal boundary; or when the annexed areas are needed for a proper town purpose, as for the extension of sewer, gas or water systems, or to supply places for the abode or business of its residents. See 37 Am. Jur., Municipal Corporations §26.

Clearly, the annexation to the defendant city of approximately 10,000 feet of state road, and nothing else, which road extends

straight westward approximately 9,000 feet, does not meet the foregoing tests. As Justice Terrell said, in *Ervin v. City of Oakland Park*, supra — "The legislature is without power to create a municipality out of sunshine, bathing beaches, custard apple swamps and lowlands that have no potential value for any purpose until large expenditures are made . . . "

Similarly, it would not appear that the legislature has power and thus could not delegate such power, to create a municipality, or a part thereof, out of a mere road. The road cannot furnish an abode for a dense population, nor is it needed for the extension of any of the city facilities. Neither is the road needed to connect any material portions or areas of or within the city. In short, there is no reasonable or practical need for the defendant city to annex a mere strip of roadway extending straight out approximately 9,000 feet from its boundary.

The county contends, in addition to the foregoing, that the annexation cannot be sustained for the reason that so much of the area as bisects the proposed sanitary district, is "not contiguous" or "reasonably compact" within the contemplation of §171.04(1), Florida Statutes. It is further contended that although the term "reasonably compact" is mentioned in the foregoing statute only in connection with areas to be annexed containing ten or more registered electors it also applies to areas containing less than ten registered voters, and that paragraph (1) must be read each part in pari materia with the others.

In this regard, even if the term "reasonably compact" was not used at all, this court is of the opinion that the concept thereof is embraced in the term "contiguous" mentioned in the first part of this paragraph and which, clearly, applies to all areas subject to annexation whether uninhabited, containing less than ten registered voters or containing ten or more. See 37 Am. Jur., Municipal Corporations § 27. It is therein stated —

" . . . the legal as well as the popular idea of a municipal corporation in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants — that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; *of compactness or contiguity*, and not separation or segregation. Contiguity is generally required even in the absence of a statutory requirement to that effect and where the annexation is left in the discretion of a judicial

trial jury contiguity will be required as a matter of law. . . . " (Italics added.)

However, our legislature has seen fit to use the words "reasonably compact." A careful reading and study of the entire concept of municipal annexation and extension requires the conclusion that the words "reasonably compact" must apply in all cases, whether the area to be annexed is large or small and whether inhabited or owned by only one person. First of all, such had to be the legislative intent. For in enacting chapter 28284, Laws of Florida, 1953, which Act amended §171.04 to include the term "reasonably compact," the legislature recites in the title of the Act that it is an act relating to the contraction and extension of territorial limits of municipalities, and provides therein that — "*Any* area to be so annexed shall constitute a *reasonably compact* addition to the incorporated territory to which it is annexed." (Italics added.)

Secondly, it is clear that the requirement of reasonable compactness for municipalities is to expedite, facilitate and make more practical the furnishing of all the services and facilities for which the city was created in the first instance. It is easily seen how these purposes would be frustrated if, in the furnishing of such services, it required circuitous routes, unnecessarily lengthy distances, hedge-hopping or other evasive action. Thus it is that the courts have frowned on any incorporation of a municipality (or annexation thereto) which resulted in the city becoming a mere ring, hoop, or belt around an unincorporated area, or which, by a maze of streets or roads, surrounds one or more unincorporated areas. See, e.g., Village of Morgan Park v. City of Chicago, 99 N. E. 388, and People ex rel. Adamowski v. Village of Streamwood, 155 N. E. 2d 635.

Clearly, then, if these are the reasons why cities, or annexed areas, are required to be "reasonably compact" these reasons are the same whether the area be uninhabited or owned by one person, whether the area contains less than ten people, or whether it contains ten or more. In other words, there is nothing magical or peculiar about an area containing ten or more which would require reasonable compactness when there would be no such requirement if there were less than ten registered voters.

We conclude, therefore, that the "strip" annexation of state road 590 is not sustainable.

It is, thereupon, ordered, declared and decreed that the board of county commissioners of Pinellas County has the duty pursuant to provisions of chapter 153, part II, Florida Statutes, to proceed toward the creation of Alligator Creek Sanitary District.