PER CURIAM.
This is an appeal from a final judgment of the Circuit Court entered adversely to appellant-plaintiffs in a Quo Warranto proceeding, seeking an ouster of the City of Tampa from lands owned by Appellants and also a declaration that Chapter 29548, Laws of Florida, Special Act 1953, extending the corporate limits of the City of Tampa to include lands owned by Appellants, is unconstitutional.
Appellants own certain unimproved, un-habitated tidal shores lying mostly under water between the fringe boundaries of the City of Tampa and the bulkhead line of upper old Tampa Bay. This property is physically separated from the city land area and the Courtney-Carapbell causeway, State Road 60, by 2,000 feet of water, but is within the territorial limits of the City. Appellants purchased this property on May 15, 1969, from the Tampa Port Authority, which owned the property at the time the corporate limits of the city were extended by Special Act in 1953. The City of Tampa has never supplied this area with municipal services, such as, fire protection, streets, sidewalks, sewer or water. However, police patrol boats and helicopters survey the area. Additionally, this area is subject to the power of the city to enjoin any person or corporation from discharging into the waters within Tampa any industrial waste or pollutants, and also the power of the city to veto any dredging or filling permits given by Tampa Port Authority. Probably because of the absence of municipal services, appellant does not pay city property taxes for any such services. Moreover, if the land is developed and becomes populated, the record establishes that the city can and will render the customary services.
The principal issues to be decided here are (1) whether the evidence is sufficient to support a judgment denying ouster, where the city has rendered no municipal services to the strip of land, uninhabited, undeveloped, and separated from the city, and where appellant-owners have paid no city taxes and thus suffer no injury and (2) whether appellants and their predecessors of title are estopped to deny the annexation of their property by the city, when eighteen years have elapsed since the 1953 Special Legislative Act extending the corporate boundaries and the 1971 action seeking ouster of the city.
 It has been clearly established by an impressive line of authority that the determination of municipal boundaries is a discretionary legislative function. City of Long Beach Resort v. Collins, Fla.1972, 261 So.2d 498; City of Auburndale v. Adams Packing Assoc., Fla.1965, 171 So.2d 161; Gillete v. City of Tampa, Fla.1952, 57 So.2d 27; State ex rel. Landis v. City of Avon Park, 1933, 108 Fla. 641, 149 So. 409; State ex rel. Davis v. City of Stuart, 1929, 97 Fla. 69, 120 So. 335. The 1885 Constitution of the State of Florida authorized the Legislature to establish and regulate municipalities by special or local law. Const., 1885, Art. 8, Sec. 8; City of Fort Lauderdale v. Town of Hacienda Village, Fla.1965, 172 So.2d 451; State ex rel. Landis v. City of Avon Park, 1933, 108 Fla. 641, 149 So. 409. In the case now before the court, the Legislature, by special law, Ch. 29548, Laws of Florida, 1953, extended the municipal boundaries of the City of Tampa, which annexation included what is now appellants’ property. Thus, the Legislature in enacting the special law must have determined the area in question to be amendable to municipal benefits and a logical extension of the City of Tampa. City of Fort Lauderdale v. Town of Hacienda, Fla.1965, 172 So.2d 451; Gillete v. City of Tampa, Fla.1952, 57 So.2d 27; State ex rel. Landis v. City of Avon Park, 1933, 108 Fla. 641, 149 So. 409.
Although it has been held that the Legislature has life and death powers over municipalities, City of Long Beach Resort v. Collins, Fla.1972, 261 So.2d 498, the courts may restrain the legislative prerogative where the annexation in question *572 is found to be unreasonable. State ex rel. Landis v. Town of Boynton, 1937, 129 Fla. 528, 177 So. 327; State ex rel. Landis v. City of Avon Park, 1933, 108 Fla. 641, 149 So. 409; State ex rel. Davis v. City of Stuart, Fla.1929, 97 Fla. 69, 120 So. 335; Town of Satellite Beach v. State ex rel. Gleason, Fla.App.2d 1960, 122 So.2d 39. The judicial decision as to what is a reasonable annexation is ultimately a factual determination; and thus much of the case law in this area must be tempered by its factual situation and the circumstances of the times in which the judicial opinion was rendered. Generally, the major considerations taken into account by past decisions include: (1) benefits and services rendered in relation to the taxes imposed on the annexed property, (2) the nature of the land annexed, and (3) legislative policy.
Appellants have emphatically stressed the fact that the City of Tampa has never supplied the land in question with municipal services of benefit to the property. On the other hand, appellants have paid no taxes on the submerged land. All the Florida cases which have ousted municipalities in similar instances concern situations where city taxes were imposed for which the land owner received no benefits, or where boundaries were extended for revenue purposes only. State ex rel. Ervin v. City of Oakland, Fla.1949, 42 So.2d 270; City of Coral Gables v. State ex rel. Landis, 1937, 129 Fla. 834, 177 So. 290. For example, in State ex rel. Landis v. Town of Boynton, 1937, 129 Fla. 528, 177 So. 327, the Town of Boynton Beach was created by special legislative act and encompassed a strip of land three miles long and one-third mile wide, lying between the East coast canal and the Atlantic. Property at the fringes of this area was annexed for purposes of revenue, although one-third of the land was underwater. The court upheld the ouster since no municipal services were provided; but fifty percent of the indebtedness of the town was allotted to the newly annexed property. Similarly, in State ex rel. Davis v. City of Stuart, 1929, 97 Fla. 69, 120 So. 335, the City of Stuart annexed rural or suburban lands, remote from the built up portion of the city and entirely outside the range of municipal benefits. Although the land was subject to taxes greatly in excess of its real value, but received no municipal benefits. The court held the extension contravened provisions of the Declaration of Rights, protecting the rights of private property, prohibiting the taking of property without just compensation.
In the present case, appellants’ contentions are based upon the fact that the land included within Tampa city limits receives no municipal benefits. However, appellants have shown no damage, since the strip of land has not been subjected to payment of taxes. In this respect, the 1930 depression cases, State ex rel. Landis v. Town of Boynton, 1937, 129 Fla. 528, 177 So. 327; State ex rel. Landis v. City of Avon Park, 1933, 108 Fla. 641, 149 So. 409; State ex rel. Davis v. City of Stuart, 1929, 97 Fla. 69, 120 So. 335, ousting outlying remote areas, are inapplicable in a case such as this where, although municipal services are not rendered, taxes are not paid. This point is clearly illustrated analogously by MacGuyer v. City of Tampa, 1925, 89 Fla. 138, 103 So. 418. The court upheld an act, extending the corporate limits of the City of Tampa, which contained a provision that no real or personal property within the territory would be liable for or taxed to pay indebtedness of the city existing at the time of annexation. Although not expressly considering the relation of receipt of municipal benefits and payment of taxes, the court upheld the act on the constitutional basis that the legislature had full power over municipalities unless some other section of the constitution was violated. Thus, the landowners therein would sustain no pecuniary injury since they were not subjected to taxation. Such is the case here, as appellants cannot be heard to complain of the absence of municipal benefits where they pay no property taxes for receipt of such services. Furthermore, it has been established that if *573 the property is developed, all normal city services would be available.
Appellants have also argued that the city should be ousted from this strip of land because of the nature of the property. They point out that the land here is tidal shores, mostly submerged, uninhabited, unimproved, undeveloped, is not susceptible to municipal services; and, therefore, cannot be included within the municipal limits. But the fact that such vacant lands are annexed, does not per se render the annexation unconstitutional. State ex rel. Davis v. City of Clearwater, 1932, 106 Fla. 761, 139 So. 377; State ex rel. Johnson v. City of Sarasota, 1926, 92 Fla. 563, 109 So. 473.
In Gillete v. City of Tampa, Fla.1952, 57 So.2d 27, the Supreme Court affirmed the lower court, denying an injunction of the city limits of Tampa. The land involved in this action was similar to the property there: rural, swampy, and undeveloped. However, the court took judicial notice of the growth and increase of the population in the City of Tampa:
“We are not persuaded that the fact that some of the area is swampy makes it unfit for urban use. In this machine age, and with the modern and highly specialized methods of filling and dredging, there are a few areas which cannot be adopted to residential or industrial use where there is a community demand for expansion. In fact what is now Davis Island . . .,—was in the not too distant past little more than a mud flat.” 57 So.2d at 29.
While it appears to have adopted a rule that prospective municipal needs and uses of the land may justify annexation, the court was unwilling expressly to recede from the rule in State ex rel. Ervin v. City of Oakland Park, Fla.1949, 42 So.2d 270. In Oakland Park, the court found that potential growth and development of an urban area was not alone sufficient grounds for annexation of municipal territory. However, the effect of that statement cannot be isolated from the fact that the court also found the boundaries of the city had been extended for revenue purposes only. Indeed, the reasoning and policy consideration supporting that decision may no longer be applicable or viable in light of recent more modern Supreme Court cases. Roundtree v. City of Port Orange, Fla.1967, 195 So.2d 560; City of Fort Lauderdale v. Town of Hacienda Village, Fla.1965, 172 So.2d 451.
Significantly, in City of Fort Lauderdale v. Town of Hacienda Village, Fla.1965, 172 So.2d 451, the Supreme Court expressly stated that the Legislature is empowered to fix boundaries to accommodate future growth of a municipality. Although the court was specifically concerned with a Legislative Act creating the Greater Fort Lauderdale area, its reasoning upholding the act is particularly relevant.
“The urbanization of the State is evidenced by the extensive development of metropolitan areas in the environs of large cities. This condition not only justifies but, in many instances, actually requires a long range legislative perspective in planning the orderly development of these metropolitan areas.” 172 So.2d at 452.
While it is at least questionable what potential use the land herein is to the City of Tampa or what envisioned in 1953, since the land must be dredged, filled and developed for any beneficial use, appellants’ property is, nevertheless, subject to the regulatory powers of the city, which control water pollution, dredging and filling. Thus, where appellants have paid no municipal tax and where the city may enlarge its boundaries for purposes of necessary growth, appellants have failed to carry their burden as showing that the 1953 extension of the boundaries of the City of Tampa was unreasonable and unnecessary. Gillete v. City of Tampa, Fla.1952, 57 So.2d 27; State ex rel. Davis v. City of Clearwater, 1932, 106 Fla. 761, 139 So. 377.
Finally, under the facts of this case, appellants are estopped to deny the exten *574 sion of the corporate limits of the City of Tampa. City of Coral Gables v. State ex rel. Gibbs, 1942, 148 Fla. 679, 5 So.2d 241; City of Auburndale v. State ex rel. Landis, 1938, 135 Fla. 172, 184 So. 787; State ex rel. Landis v. Town of Boca Raton, 1937, 129 Fla. 673, 177 So. 293. Appellants bought the property in 1969, knowing that it lay within the boundaries of the city, set by special act in 1953. Thus, appellant owners of the property and their predecessors of title had knowledge and acquiesced in the inclusión for 18 years. Furthermore, the court in State ex rel. Landis v. Town of Boca Raton, 1937, 129 Fla. 673, 177 So. 293, found estoppel a sound rule in most cases where the question as to the reasonableness of the annexation is close, and honest men might differ as to the question of benefits of the annexation.
For these reasons stated above the judgment appealed from should be and is hereby affirmed.
McNULTY, C. J., HOBSON, J., and SCHWARTZ, ALAN R., Associate Judge, concur.